UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THOMAS R. AHERN, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 21-11007-DJC |
| | : | |
| v. | : | |
| | : | |
| SIG SAUER, INC., AND CITY OF | : | |
| CAMBRIDGE, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S OPPOSITION TO
SIG SAUER, INC.'S MOTION TO DISMISS**

Since its introduction to the marketplace in 2014, the P320 pistol (the "P320"),

manufactured and sold by SIG Sauer, Inc. ("SIG"), has been plagued by defective discharges in

which the P320 fires without a trigger pull. *See* Complaint ¶ 7 ("Since its inception, there have

been at least fifty-two reported un-commanded discharges of the P320 involving federal agents,

state and local police officers, and citizens."). During this time, users of the P320 have suffered

a plethora of injuries, including severe ones, from these defective discharges. *See Id.* ¶¶ 106-56.

The plaintiff, Cambridge Police Lieutenant Thomas Ahern, is one of the many victims of the

defective P320, and he asserts claims against SIG based upon his injuries and damages resulting

from the defective P320.

SIG has moved to dismiss Count I (strict liability), Count II (negligence), Count III

(breach of implied warranty of liability), Count IV (breach of express warranty), Count V

(negligent infliction of emotional distress), Count VI (intentional infliction of emotional

distress), Count VII (violation of Mass. Gen. Laws ch. 93A (hereinafter, "Chapter 93A")), and

Count IX (violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308(a). For the following reasons, SIG's motion to dismiss should be denied.

## I.  <u>Legal Standard</u>

"In ruling on [a Rule 12(b)(6) motion, a court must 'treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff.'" *Taupier v. Davol, Inc.*, 490 F. Supp. 3d 430, 436-36 (D. Mass.2020) (quoting *In re: Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir.2019)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the court "may augment . . . facts and inferences from data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir.2011).

## II.  <u>Argument</u>

As discussed more fully herein, Lieutenant Ahern has sufficiently alleged physical injury resulting from a bullet impacting his leg. SIG's claim that he has plead "no physical injury" for purposes of the negligence and implied warranty claims (Counts II and III) therefore fails. At the Rule 12(b)(6) stage, the Court must draw all reasonable inferences in favor of Lieutenant Ahern. The Court may reasonably infer that a bullet that hits a metal object immediately adjacent to the human body will result in physical harm, including blunt force trauma and contusion.

SIG's assertion that Massachusetts "does not recognize" the concept of strict liability (Count I) is inaccurate. The "[l]egislature has made the Massachusetts law of warranty congruent in nearly all respects with the [strict liability] principles expressed in the Restatement

(Second) of Torts s 402A (1965)."  *Arbella Mutual Ins. Co. v. Field Controls LLC et al.*, 2019 WL 1489877, at *5 n.4 (D. Mass.2019).  Count I may therefore be construed as arising under Mass. Gen. Laws ch. 106, § 2-314.

The Complaint adequately alleges physical manifestations of negligent infliction of emotional distress and conduct egregious enough to support a claim for intentional infliction of emotional distress (Counts V and VI).  Because Lieutenant Ahern has adequately plead implied warranty, his Magnuson-Moss Act claim (Count IX) survives a motion to dismiss.  Finally, SIG fails to provide any support for its contention that Chapter 93A (Count VII) should not apply to a "handgun purveyor" such as SIG.

### A.    Strict Liability

SIG's assertion that Massachusetts does not recognize strict liability is misleading.  "In Massachusetts[,] products liability, negligence and breach of the warranty of merchantability are somewhat intertwined."  *Arbella Mutual Ins. Co.*, 2019 WL 1489877, at *5.

> Amendments to the Massachusetts version of the Uniform Commercial Code make it clear that the Legislature has transformed warranty liability into a remedy intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions.  Legislature has made the Massachusetts law of warranty congruent in nearly all respects with the [strict liability] principles expressed in the Restatement (Second) of Torts s 402A (1965).

*Arbella Mutual Ins. Co.*, 2019 WL 1489877, at *5 n.4 (quoting *Back*, 378 N.E.2d at 968-69) (internal citation omitted).  *See also Smith v. Robertshaw Controls Co.*, 410 F.3d 29, 35 (1st Cir. 2005) (quoting *Back*, 378 N.E.2d at 968).  Whether viewed as strict liability or breach of the implied warranty of merchantability, the fundamental nature of the claim survives a motion to dismiss under Massachusetts law.

3

B.    **Negligence (Count II) and Breach of the Implied Warranty of Merchantability (Count III)**

SIG's argument that Lieutenant Ahern has not alleged sufficient injury to state a claim for breach of the implied warranty of merchantability and negligence ignores the allegations of the Complaint and the logical inferences therefrom.  The Complaint alleges that Lieutenant Ahern was impacted by a bullet and suffered not only economic loss through retaliation and a destroyed phone, but also physical and emotional harm because of the P320 firing on its own and hitting his leg.  *See* Compl. ¶ 42 ("[T]he bullet impacted Lieutenant Ahern's left thigh over his duty pants [and] deflected off a magnet affixed to his cellphone in his left pocket").  SIG's argument that such an impact does not result in injury defies common sense.  The P320 is a lethal weapon advertised for use by the military and law enforcement (i.e., those most likely to need a reliable, lethal weapon for attack and protection).  *Id.* ¶ 65.  Firearms, by their nature, are designed to wound and kill.  That the bullet did not penetrate Lieutenant Ahern's tissue or bone is of no moment.  The Court can reasonably infer that a bullet striking a cell phone in the pocket of a person's pant and impacting the person's thigh will result in physical injury, including blunt force trauma and contusions, as Lieutenant Ahern's medical records will show.  *See Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").[1]

Lieutenant Ahern is not required to plead extensive detail about his physical injuries.  Notice that he was shot and "impacted" by a bullet suffices.  *See* Fed. R. Civ. P. 8(a)(2) (complaint need only contain "a short and plain statement of the claim showing that the pleader

---

[1] If the Court wishes to review his medical records showing the bullet's impact and injury, Lieutenant Ahern will submit them upon request.  *See Alternative Energy v. St. Paul*, 267 F.3d 30, 33 (1st Cir.2001) (courts may rely on "documents central to plaintiffs' claim" at motion to dismiss stage).

4

is entitled to relief"); *Silverstrand Investments. v. AMAG Pharmaceutical, Inc.*, 707 F.3d 95, 101

(1st Cir. 2013) (complaint requires "'enough detail to provide a defendant with fair notice of

what the . . . claim is and the grounds upon which it rests'") (quoting *Ocasio-Hernandez v.

Fortuno- Burset*, 640 F.3d 1, 12 (1st Cir. 2011)); *Barbosa v. Massachusetts*, 2016 WL 3976555,

at *2 (D. Mass. 2016).  The complaint adequately provides SIG with such notice.

SIG's reliance on *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250 (1st Cir.2010), is

misplaced.  Mot. to Dism. at 6.  The plaintiff in *Rule* conceded that her dogs suffered no injury

from an unsafe heartworm drug.  Lieutenant Ahern, by contrast, alleges that his defective P320

shot and impacted his thigh with a nine-millimeter bullet, and the Court can and should infer an

allegation of injury thereby.

SIG argues that Lieutenant Ahern has not adequately alleged injury under the economic

loss doctrine.  In support of this contention, SIG claims that "the discharged bullet did not impact

or penetrate Plaintiff's body."  Mot. to Dism. at 8.  The Complaint specifically alleges, however,

that the bullet *impacted* Lieutenant Ahern's body.

> The P320 discharged without a trigger pull *and the bullet impacted Lieutenant Ahern's left thigh* over his duty pants, deflected off a magnet affixed to his cellphone in his left pocket, entered an equipment bag on the floor of the van, and came to rest inside a ballistic helmet.

Compl. ¶ 42.  This allegation is sufficient to defeat a motion to dismiss.  *See Taupier v. Davol,

Inc.*, 490 F. Supp. 3d at 436-36 ("In ruling on [a Rule 12(b)(6)] motion, a court must 'treat all

well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the

plaintiff.'") (citation omitted).

The SJC's decision in *Berish v. Bornstein*, 770 N.E.2d 961, 975 (Mass. 2002), is instructive. In *Berish*, the SJC reasonably inferred damages beyond mere economic loss based on its reading of the allegations of the complaint and rejected the lower court's "overly restrictive construction" of the complaint's allegations.

> The complaint alleges that the defects and deficiencies in the condominium development included poor construction of retaining walls, improper installation of skylights and sliding glass doors, improper construction of foundations, failure to install adequate flashing on the roofs, and failure to vent bathroom exhaust fans and attics to the outside. Accepting these allegations as true, it is reasonable to infer that the enumerated 'defects and deficiencies' caused property damage beyond the defects in the condominium units themselves, and, therefore, that the trustees could have demonstrated that they were entitled to relief on their negligence claims.

*Id.* A similar analysis applies here. Lieutenant Ahern alleges that his P320 defectively discharged and that the bullet impacted his thigh. The Court can reasonably infer that a bullet impacting a person's body causes physical injury.

**C.    Negligent Infliction of Emotional Distress (Count V) and Intentional Infliction of Emotional Distress (Count VI)**

SIG's contention that the Complaint inadequately alleges physical manifestations of negligent infliction of emotional distress ("NIED") ignores that such manifestations may encompass a broad range of symptoms. *See, e.g., Gutierrez v. Mass. Bay Transp. Auth.*, 772 N.E.2d 552, 566-67 (Mass.2002) (evidence of "tension headaches, concentration and reading problems, sleeplessness, upset stomach, nightmares, and depressions" may serve as "objective manifestations" of NIED). Moreover, "[m]edical experts . . . need not have observed an actual, external sign of physical deterioration." *Sullivan v. Bos. Gas Co.*, 605 N.E.2d 805, 810-11 (Mass.1993) (observing that courts have upheld NIED claims based on "severe headaches,

occasional suicidal thoughts, sleep disorders, reduced libido, fatigue, stomach pains, and loss of appetite" as well as "headaches, insomnia, loss of appetite and muscle tension").

> The Complaint alleges that
>
> As a direct and proximate result of the breaches set forth in this Count, Plaintiff suffered emotional distress, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, and loss of earnings and earning capacity.  These injuries are either permanent or continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

Compl. ¶ 190.  No greater specificity is required at this early stage of the proceeding.  The Complaint suffices to allege that Lieutenant Ahern suffered physical manifestations of emotional distress after his P320 fired on its own and injured him.[2]

As to the intentional infliction of emotional distress claim, the Complaint alleges that, for the past seven years, SIG has actively marketed and sold a firearm – a product that is lethal by design – which it knew or should have known had a critical safety design defect.  *See* Compl. ¶¶ 68-156.  Indeed, the Complaint alleges that, since the P320's inception in 2014, there have been at least fifty-two reported un-commanded discharges of the P320 involving federal agents, state and local police officers, and citizens.  *Id.* ¶ 7.  This is sufficiently outrageous to satisfy the Rule 12(b)(6) pleading standard.  *See Agis v. Howard Johnson Co*, 55 N.E.2d 315, 318–19 (Mass. 1976) (citations omitted) (requiring, among other things, "that the actor . . . knew or should have known that emotional distress was the likely result of his conduct; . . . [and] that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community").

---

[2] SIG's argument that it has taken steps to ensure the safety of the P320 are factual in nature and irrelevant to a Rule 12(b)(6) analysis.

The Complaint alleges that SIG knew or should have known of the unacceptable risk that users of the P320 might experience a defective discharge of the weapon, and consequently be killed or suffer severe bodily injury and concomitant emotional distress as a result because, *inter alia*, there have been repeated instances of such misfires across the United States. *See Limone v. United States*, 579 F.3d 79, 95 (1st Cir.2009) ("The SJC has made pellucid that such a finding may be grounded either on actual knowledge or on a defendant's deliberate disregard of a substantial probability that his actions will produce severe emotional distress.").

Moreover, a defendant can be found liable for intentional infliction of emotional distress based on its failure to remedy a severe problem. For example, in *Simon v. Solomon*, 431 N.E.2d 556, 562 (Mass.1982), the SJC upheld a jury's verdict on an intentional infliction of emotional distress claim where a landlord was aware that a tenant's apartment routinely flooded with sewage and failed to redress the problem. The SJC reasoned that the jury could have inferred that the defendant "knew or should have known that unless it fixed the [problem] flooding would occur, and that floods of sewage water were very likely to cause emotional harm." *Id.* Likewise, in this case, "the jury could . . . find that [the defendant] displayed, over a long and repetitious course, such a pattern of indifference that its conduct was outrageous, 'beyond all possible bounds of decency.'" *Id.* (citation omitted).

The Complaint also alleges that SIG was *on notice* of severe design problems with the P320, evinced not simply from the many defective discharge incidents enumerated in the Complaint, but also from SIG's ambiguously worded "voluntary upgrade" notice in August 2017. *See* Compl. ¶¶ 87-100. That SIG issued a second reminder notice in April 2018, after Deputy Sheriff Marcie Vadnais had her femur severed in February 2018 by a defective P320 discharge (*id.* ¶¶ 124-27), further evinces SIG's knowledge that the gun has severe design and

manufacturing defects that can allow the gun to fire by itself.  A jury easily "could . . . find that [the defendant] had displayed, over a long and repetitious course, such a pattern of indifference that its conduct was outrageous, 'beyond all possible bounds of decency.'"  *See Simon*, 431 N.E.2d at 562.

The defective P320 has severely injured numerous law enforcement officers and citizens and literally placed, and continues to place, thousands of lives at risk.  Marketing and continuing to place in commerce a gun that SIG knew or should have known has been plagued by numerous defective discharges by itself evinces reckless indifference to the safety and well-being of civilians who carry the P320, as well as law enforcement officers who are required to carry the P320 firearm every day in connection with their public service.

### D.    Count IV and "Particular Purpose"

The analysis for a claim under Mass. Gen. Laws Ch. 106 § 2-315 turns on whether:

> (1) the seller had reason to know of the particular purpose for which the buyer requires the goods; (2) the seller had reason to know of the buyer's reliance on the seller's skill or judgment in selecting or furnishing suitable goods; and (3) the buyer's reliance in fact.

*Fernandes v. Union Bookbinding Co., Inc.*, 507 N.E.2d 728, 733 (Mass.1987).[3]  "A particular purpose envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses what are customarily made of the goods in question."  *Id.* at 35 (citations omitted).  The Complaint alleges that the P320's particular purpose was to be situated within a holster.  Given law enforcement's use of the gun and SIG's marketing to the law enforcement community, the Complaint adequately pleads that the need to holster the gun is

---

[3] Although titled express warranty, Count IV is pled as an implied warranty of fitness for a particular purpose claim under § 2-315.

unique to the law enforcement community, who must always carry their firearm while at work, as compared to recreational users who may store firearms in a safe, cabinet, or other container when not in use.

In addition, SIG's argument that Lieutenant Ahern did not purchase the P320 is a defense expressly barred by Massachusetts statute:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods.

Mass. Gen. Laws ch. 106 § 2-318.  Because SIG specifically marketed to law enforcement, SIG had every expectation that Lieutenant Ahern, and those similarly situated, would be "expected to use, consume or be affected" by the P320.

Finally, SIG's arguments regarding the Magnuson-Moss Warranty Act (Count IX) hinge on SIG's contention that the implied warranty claims should be dismissed.  *See Duncan v. Nissan N. Am., Inc.*, 305 F. Supp. 3d 311, 322 (D. Mass.2018) ("[T]he Magnuson-Moss Act count rises or falls with the express and implied warranty claims.").  Because the Complaint adequately alleged breach of implied warranty, *see supra*, SIG's motion to dismiss Count IX should be denied.

### E.    Chapter 93A

SIG contends that the Complaint's Chapter 93A claim (Count VII) fails because SIG is not a "handgun-purveyor" under 940 C.M.R. 16.00.  The regulation expressly provides, however, that "940 CMR 16.00 defines certain unfair acts or practices *but is not intended to describe all types of practices prohibited"* under Chapter 93A (emphasis added).  Further, "940 CMR 16.00 does not legitimize acts that are not specifically prohibited by 940 CMR 16.00 . . .

[and] is designed to supplement existing statutes and regulations."  By its own terms, 940 C.M.R. 16.00 does not limit the reach of Chapter 93A and SIG's argument to the contrary is unsupported by the regulation.  SIG's motion to dismiss the Chapter 93A claim should therefore be denied.

## CONCLUSION

For the foregoing reasons, SIG's motion to dismiss should be denied.

Respectfully submitted,

*/s/ Peter K. Levitt*
Peter K. Levitt (BBO #565761)
Michelle R. Pascucci (BBO # 690889)
Donnelly Conroy & Gelhaar, LLP
260 Franklin Street, Suite 1600
Boston, MA  02110
(617) 720-2880
pkl@dcglaw.com
mrp@dcglaw.com

*/s/ Jeffrey S. Bagnell*
Jeffrey S. Bagnell (BBO # 561013)
Admitted Pro Hac Vice
Jeffrey S. Bagnell, Esq., LLC
55 Post Road West
Westport, CT  06880
(203) 984-8820
jeff@bagnell-law.com

Counsel for Plaintiff Thomas R. Ahern

Dated:  October 1, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 1, 2021.

*/s/ Peter K. Levitt*
Peter K. Levitt