UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THOMAS AHERN, <br><br> Plaintiff <br><br> v. <br><br> SIG SAUER, INC. and CITY of CAMBRIDGE, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 21-cv-11007-DJC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### MEMORANDUM AND ORDER

**CASPER, J.**                                                                                           **December 7, 2021**

## I.   Introduction

Plaintiff Thomas Ahern ("Ahern") has filed this lawsuit against Defendants Sig Sauer, Inc. ("Sig Sauer") and the City of Cambridge ("Cambridge") asserting claims against Sig Sauer for strict product liability (Count I), negligence (Count II) breach of the implied warranty of merchantability (Count III), breach of implied warranty of fitness for a particular purpose (Count IV), negligent infliction of emotional distress (Count V), intentional infliction of emotional distress (Count VI), violation of Mass. Gen. L. c. 93A, §§ 2, 11 ("Chapter 93A") (Count VII), and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308(a) ("MMWA") (Count IX), arising from the alleged discharge of Ahern's P320 Pistol manufactured by Sig Sauer. D. 1.[1]  Sig Sauer now moves to dismiss for failure to state a claim. D. 17.  For the reasons stated below, the Court

---

[1] Ahern also asserts claims against the City of Cambridge, Counts VIII and X, which are not at issue here.

1

ALLOWS Sig Sauer's motion to dismiss as to Counts I-VI and IX and DENIES the motion as to Count VII.  Counts II, III, V and IX are dismissed without prejudice and with leave to amend.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  García-Catalán, 734 F.3d at 103 (citation omitted).

## III.   Factual Background

The following summary is based upon the allegations in Ahern's complaint, D. 1, which are accepted as true to resolve the motion to dismiss.

Ahern serves as a Detective Lieutenant with the Cambridge Police Department ("CPD"), where for the past five years he was commander of its Special Response Team.  D. 1 ¶ 1.  Ahern is a certified firearms instructor and armorer for the Sig Sauer P320 Pistol ("P320"), among other firearms.  Id. ¶ 2.  Around summer 2017, CPD discussed transitioning its officers to the P320 from different, previously used Sig Sauer models.  See id. ¶¶ 5, 15, 28.

Ahern conducted research on the P320 and expressed safety concerns to CPD leadership, specifically regarding reports of the P320 firing or discharging without a trigger pull. Id. ¶¶ 8, 28-37. Since the P320 was introduced in North America, users (including law enforcement officers) have reported at least 52 of these instances. Id. ¶ 7; see id. ¶¶ 107-55. In marketing the P320, Sig Sauer stated that the "P320 won't fire unless you want it to." Id. ¶¶ 13, 58-59. In the original version of the P320 owner's manual, however, Sig Sauer warned that the pistol may fire if dropped and recommended that users keep the chamber empty unless actually firing, although such language was replaced in 2017 to state that "[c]areless and improper handling of any firearm can result in unintentional discharge." Id. ¶¶ 60, 101. CPD required its officers to carry firearms with a round of ammunition in the chamber. Id. ¶ 61. Ahern alleges that Sig Sauer was aware of these discharge instances as early as 2016 but did not disclose them. Id. ¶¶ 68-75. In August 2017, Sig Sauer instituted a Voluntary Upgrade Program for the P320, which was intended to correct a defective firing assembly in several hundred thousand P320s and included other changes unrelated to drop safety (e.g., weight and design). Id. ¶¶ 87-92.

In 2018, CPD transitioned its service firearms to the P320. Id. ¶¶ 9-10. Sig Sauer certified to CPD that it provided only P320s that had been built with the new and upgraded components outlined in the Voluntary Upgrade Program. Id. ¶ 38. Since CPD transitioned to the P320 in 2018, it has reported three un-commanded discharges. Id. ¶ 15. In May 2019, while working an overtime shift, Ahern's P320 discharged without a trigger pull. Id. ¶¶ 11, 40. The discharge occurred while Ahern was performing a routine function check of the holster and P320. Id. ¶¶ 12, 41. During the routine function check, Ahern did not touch the trigger. Id. ¶ 12. Upon discharge, the bullet impacted Ahern's left thigh over his duty pants and deflected off a magnet fixed to his cellphone, landing in an equipment bag beside him on the floor. Id. ¶ 12, 42.

**IV.     Procedural History**

Ahern initiated this lawsuit on June 16, 2021. D. 1. Sig Sauer now moves to dismiss. D. 17. The Court heard the parties on the pending motion and took the matter under advisement. D. 35.

**V.      Discussion**

   **A.      Strict Liability (Count I)**

Ahern asserts one count of strict product liability (Count I), but Massachusetts does not provide a strict liability cause of action for a defective product. Phillips v. Medtronic, Inc., 754 F. Supp. 2d 211, 216 (D. Mass. 2010) (citing Commonwealth v. Johnson Insulation, 425 Mass. 650, 653 (1997) (explaining that Massachusetts law does not "allow claims for strict liability in tort for defective products" but that the "warranty [of merchantability] should establish liability as comprehensive as that to be found in other jurisdictions that have adopted the tort of strict product liability")). "Such a claim must be brought as a claim for breach of the implied warranties of merchantability and/or fitness for a particular purpose . . . or of an express warranty." Id. As Ahern has asserted these implied warranty claims in Counts III and IV, the Court addresses them below and allows the motion to dismiss as to Count I.

   **B.      Negligence (Count II) and Implied Warranty of Merchantability (Count III)**

Ahern presses a negligence claim for defective design and failure to warn (Count II), and a claim for breach of the implied warranty of merchantability (Count III).

Sig Sauer asserts that both claims fail because Ahern has not alleged a cognizable injury, specifically that Ahern's complaint does not allege a physical injury, therefore the economic loss rule bars recovery for these claims. D. 18 at 6-8 (citing Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 252 (1st Cir. 2010) (explaining that "[r]ecovery generally is not available under the

warranty of merchantability where the defect that made the product unfit caused no injury to the claimant, the threat is now gone and nothing now possessed by the claimant has been lessened in value"); Haglund v. Philip Morris, Inc., 446 Mass. 741, 746 (2006) (explaining that a "seller breaches its warranty obligation when a product that is 'defective and unreasonably dangerous' . . . for the '[o]rdinary purposes' for which it is 'fit' causes injury"); FMR Corp. v. Bos. Edison Co., 415 Mass. 393, 395 (1993) (noting that "purely economic losses are unrecoverable . . . in the absence of personal injury or property damage")).

Ahern counters that the Court should "infer that a bullet striking a cell phone in the pocket of a person's pant and impacting the person's thigh will result in physical injury, including blunt force trauma and contusions." D. 28 at 4. Ahern, however, cites no authority for the proposition that a court may infer physical injury when none is alleged, and here he does not allege such blunt force trauma, contusions or any other physical injury from the bullet striking a cellphone in his pocket. See D. 1 ¶¶ 171, 177 (alleging emotional distress, mental anguish, and other non-physical injuries in Counts II and III).[3] Ahern relies upon Berish v. Bornstein, 437 Mass. 252, 268 (2002), to argue that a court may infer physical injury where none is alleged, but Berish does not support such a proposition. First, Berish "extended the economic loss doctrine" to construction defects. Solfisburg v. Glenco, Inc., No. 18-cv-10266-IT, 2019 WL 4770951, at *4 (D. Mass. Sept. 30, 2019) (citing Berish, 437 Mass. at 267). Second, even assuming Berish applied to Ahern's claims here, the condominium owners there made allegations that improper installation of skylights, chimneys and sliding doors resulted in "water leakage and damage to the sheet rock and other

---

[3] To the extent Ahern argues that he has pleaded a cognizable injury from "emotional harm because of the P320 firing on its own and hitting his leg," D. 28 at 4, the economic loss rule bars recovery for emotional damages in the absence of allegations of physical harm, see Lewis v. Gen. Elec. Co., 37 F. Supp. 2d 55, 59 (D. Mass. 1999), and the Court addresses the sufficiency of Ahern's emotional distress allegations as to those claims below.

materials" inside the units, and that construction of outdoor decks not in accordance with the state building code resulted in premature deterioration and rot. Berish, 437 Mass. at 256. In other words, the owners alleged property damage that caused them a loss, which Ahern does not. See id. at 268.

At the motion hearing, Ahern's counsel suggested that he could amend the complaint with allegations that the bullet impacting Ahern's leg "did cause a contusion . . . he went to the emergency room [and] they diagnosed him with a leg injury." See also D. 28 at 4 (suggesting that medical records showing Ahern's injuries from the bullet impact could be submitted to the Court). Accordingly, Ahern has failed to state a claim for negligence (Count II) and breach of the implied warranty of merchantability (Count III), and the Court allows the motion as to these counts without prejudice and with leave to amend.[4]

### C.     Implied Warranty of Fitness for a Particular Purpose (Count IV)[5]

"The warranty of fitness for a particular purpose is akin to the warranty of merchantability but applies only when a buyer specifies a use for the product 'which is peculiar to the nature of his business.'" Evans v. Daikin N. Am., LLC, No. 17-cv-10108-RGS, 2019 WL 438340, at *6 (D. Mass. Feb. 4, 2019) (quoting Mass Gen. L. c. 106, § 2-315 comment 2). Ahern asserts that Sig Sauer breached the implied warranty of fitness for a particular purpose when it warranted that the P320 would be suitable for use in a holster and removed from service belts without firing. Thus,

---

[4] To the extent Ahern can amend his pleadings to state a claim for breach of the implied warranty of merchantability, the Court also allows the motion to dismiss without prejudice as to the MMWA claim (Count IX) because the MMWA "is coextensive with state law," and Ahern's other warranty claim fails. See Bush v. WellPet, LLC, No. 21-cv-10059-RGS, 2021 WL 1408118, at *3 (D. Mass. Apr. 14, 2021) (dismissing MMWA claim based on lack of surviving state law warranty claim).

[5] Ahern's complaint states Count IV is for breach of express warranty, D. 1 at 40, however Ahern clarified in his motion papers that Count IV is "pled as an implied warranty of fitness for a particular purpose claim under § 2-315." D. 28 at 9 n.3.

Sig Sauer can only be liable here if Ahern "envisaged a specific use for [the P320] peculiar to [himself], and if [he] communicated that specific purpose to Defendants." Rule v. Fort Dodge Animal Health, Inc., 604 F. Supp. 2d 288, 297 (D. Mass. 2009), aff'd, 607 F.3d 250 (1st Cir. 2010). Ahern does not allege, however, that holstering the P320 was a specific purpose peculiar to his own circumstances; rather, he suggests that all officers holster their service weapon, thus falling within an ordinary, intended use of the P320. Moreover, there is no allegation that Ahern "communicated any such special purpose to [Sig Sauer]," or that he relied upon Sig Sauer's "skill or judgment to select or furnish [the P320]." Id. The sole allegations that describe CPD's discussions with Sig Sauer prior to purchasing P320s do not mention holsters, but rather general safety concerns about the P320. See D. 1 ¶¶ 38-39.

Accordingly, Ahern's claim for breach of implied warranty of fitness for a particular purpose (Count IV) fails.

### D. Emotional Distress (Counts V and VI)

#### 1. *Negligent Infliction of Emotional Distress*

To prevail on a claim for negligent infliction of emotional distress (Count V), Ahern must prove: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by object symptomatology, i.e., objective corroboration of the emotional distress alleged; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Brooks v. Martha's Vineyard Transit Auth., 433 F. Supp. 3d 65, 77 (D. Mass. 2020) (citing Rodriguez v. Cambridge Hous. Auth., 443 Mass. 697, 701 (2005)). Sig Sauer asserts that this claim fails because Ahern does not allege any physical harm manifested by symptoms. D. 18 at 9-10. Ahern argues that "[n]o greater specificity is required at this early stage of the proceeding," beyond the allegations in his complaint, which state that he "suffered emotional distress, mental

7

anguish, inconvenience, loss of the capacity for the enjoyment of life." D. 28 at 7 (quoting D. 1 ¶ 190). Ahern, however, must still allege objective symptoms caused by his alleged emotional distress, but the complaint makes no such allegation. See Doe v. Emerson Coll., 153 F. Supp. 3d 506, 517 (D. Mass. 2015) (dismissing emotional distress claim where "complaint allege[d] that the defendants' negligence caused her 'pain and suffering' without any description or explanation of how that emotional distress has manifested in physical symptoms") (citing Sullivan v. Bos. Gas Co., 414 Mass. 129, 137 (1993)); Hindle v. Toyota Motor Credit Corp., No. 18-cv-11306-FDS, 2018 WL 6033484, at *4 (D. Mass. Nov. 16, 2018) (dismissing emotional distress claim where complaint alleged "only that [plaintiffs] experienced a 'great deal of stress and anxiety' and that their emotional distress 'manifested itself in physical symptoms,'" as "injury arising out of negligent infliction of emotional distress requires specific factual allegations, not a mere 'formulaic recitation of the elements'"); Rodriguez, 443 Mass. at 705 (overturning dismissal of emotional distress award where plaintiff had shown diagnosis posttraumatic stress disorder, nightmares, insomnia, and dissociative episodes). At the motion hearing, Ahern's counsel suggested that he could amend the complaint to "add specifically the [symptoms] that he has suffered," including "anxiety, inability to sleep, depression." Accordingly, the Court allows the motion to dismiss Count V without prejudice and with leave to amend, given the above representation. See Axford v. TGM Andover Park, LLC, No. 19-CV-11540-ADB, 2021 WL 681953, at *13 (D. Mass. Feb. 22, 2021) (dismissing emotional distress claims for same reasons but allowing leave to amend with physical symptoms).

    2.  *Intentional Infliction of Emotional Distress*

  As to intentional infliction of emotional distress (Count VI), Ahern alleges that Sig Sauer's failure to issue a mandatory recall of the P320, despite having knowledge of its defects and ability

8

to do so, caused his emotional distress. D. 28 at 7-8; see D. 1 ¶¶ 192-99 (alleging intentional inflection of emotional distress for failure to recall the P320). Sig Sauer argues that the claim fails because Ahern's allegations do not rise to the requisite level of extreme and outrageous conduct and likewise fail because Sig Sauer's actions were not directed toward Ahern. D. 18 at 10. To state a claim for intentional infliction of emotional distress, Ahern must show: "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (alteration in original) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976)). "The standard for making a claim of intentional infliction of emotional distress is very high . . . ." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). Conduct is "extreme and outrageous" only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46, comment d (1965)) (internal quotation mark omitted). Recovery for such a claim generally "requires more than 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" Doyle, 103 F.3d at 195 (quoting Foley, 400 Mass. at 99) (internal quotation marks omitted).

As to allegedly extreme and outrageous to meet such a high standard, Ahern alleges only that Sig Sauer knew about the alleged defects in the P320 but chose not to issue a mandatory recall, but rather implemented the Voluntary Upgrade Program. D. 1 ¶¶ 191-95. Ahern cites no authority for the proposition that such a decision goes "beyond all possible bounds of decency" or would be regarded as "atrocious and utterly intolerable in a civilized community." See Caputo v. Bos. Edison Co., 924 F.2d 11, 15 (1st Cir. 1991) (concluding that defendants' failure to correct radiation meter and report high radiation readings to regulator its "behavior [was not] in any manner" extreme and outrageous); Dusoe v. Mobil Oil Corp., 167 F. Supp. 2d 155, 166 (D. Mass. 2001) (concluding that company's conduct was not extreme and outrageous where evidence did not show that company "knowingly contaminated the plaintiffs' water supply" or that it "engaged in an 'extensive cover-up' of its allegedly unlawful behavior").

Even assuming *arguendo* Sig Sauer's alleged failure to issue a mandatory recall was extreme and outrageous conduct, Ahern has made no allegation that Sig Sauer "intended to inflict emotional distress or that [it] knew or should have known that emotional distress was the likely result of [its] conduct" or lack thereof. Agis v. Howard Johnson, Co., 371 Mass. 140, 144–145 (1976); see Haughton v. Hill Lab'ys, Inc., No. 06-cv-11217 RGS, 2007 WL 2484889, at *3 (D. Mass. Aug. 30, 2007); Dusoe, 167 F. Supp. 2d at 166. In other words, the complaint contains no allegations that Sig Sauer's decision not to issue a mandatory recall, but rather a Voluntary Upgrade Program (which predated both CPD switching to the P320 and Ahern's discharge incident, see D. 1 ¶ 87) was directed at him and intended to cause him emotional distress. See Gable v. Borges Const., Inc., 792 F. Supp. 2d 117, 126 (D. Mass. 2011) (dismissing emotional distress claim where complaint did not allege tortious intent toward plaintiff). The sole case upon which Ahern relies offers no support here. In Simon v. Solomon, 385 Mass. 91, 95-97 (1982), a

10

landlord failed to act to fix and prevent damage after plaintiff's apartment was flooded approximately thirty times over several years with sewage water, despite the landlord's legal duty to act in such circumstances. In other words, the landlord repeatedly failed to act as to the plaintiff's situation. See id. Here, by contrast, Ahern cites no legal duty to impose a mandatory recall in lieu of actions it otherwise took even as alleged. See McGonagle v. United States, 155 F. Supp. 3d 130, 136 (D. Mass. 2016) (dismissing intentional infliction of emotional distress claim premised on failure to act where allegations not sufficient to support duty to act affirmatively).

Accordingly, the Court allows the motion to dismiss Count VI.

### E. Chapter 93A (Count VII)

As to Ahern's Chapter 93A claim, Sig Sauer argues only that Ahern lacks standing to bring it because 940 C.M.R. § 16.00 *et seq.*, which define certain unfair or deceptive acts or practices in the sale of handguns, "only applies to transactions involving 'handgun-purveyors'" that transfer handguns to customers, but contains a law enforcement exclusion. D. 18 at 16 (citing 940 C.M.R. §§ 16.01, 16.02). While the law enforcement exclusion in § 16.01 may preclude Ahern's theory of Chapter 93A liability based upon these regulations, the regulations provide only one avenue for Ahern to assert Chapter 93A liability against Sig Sauer and the Court does not read Ahern's complaint to seek liability solely on this basis. See D. 1 ¶¶ 200-07; 940 C.M.R. § 16.00 (stating that regulations are "not intended to describe all types of practices prohibited by" Chapter 93A); Am. Shooting Sports Council, Inc. v. Att'y Gen., 429 Mass. 871, 878 (1999) (explaining that "case-by-case adjudication whether a particular product is defective, unmerchantable, or unfit constitutes one way in which [firearm's] sale may be defined as an unfair or deceptive act or practice under [Chapter 93A]" in addition to "regulation[s] by the Attorney General . . . for defining conduct unlawful under the statute"); City of Bos. v. Smith & Wesson Corp., No.

199902590, 2000 WL 1473568, at *11 (Mass. Super. July 13, 2000) (concluding that tort and contract claims not preempted by § 16.00).

Accordingly, the Court denies the motion to dismiss Count VII.

### VI. Conclusion

For the foregoing reasons, the Court ALLOWS Sig Sauer's motion to dismiss, D. 17, as to Counts I-VI and IX and DENIES the motion as to Count VII. Counts II, III, V and IX are dismissed without prejudice and with leave to amend. Any such amended complaint including these counts should be filed by January 7, 2022.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge