UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS R. AHERN,<br><br>    Plaintiff,<br><br>v.<br><br>SIG SAUER, INC. and CITY OF CAMBRIDGE,<br><br>    Defendants. | No. 21-cv-11007-DJC |

**THOMAS AHERN'S MOTION TO COMPEL
THE CITY OF CAMBRIDGE TO RESPOND TO DISCOVERY
REQUESTS AND PRODUCE RESPONSIVE DOCUMENTS**

Pursuant to Local Rule 37.1, Thomas Ahern requests that this Court order the defendant, the City of Cambridge ("Cambridge"), to provide complete responses to his discovery requests and produce responsive documents. Simply put, discovery in this case has been ongoing for more than nine months and the already-extended deadline for document discovery has passed, yet the City of Cambridge has failed to fully answer discovery requests and failed to produce all responsive documents. In fact, Cambridge has repeatedly stated that it has failed to complete its own internal review for responsive documents. This blatant disregard for this Court's discovery deadlines has delayed this case and prejudiced Lieutenant Ahern.

**BACKGROUND**

**1.    Factual Background**

This lawsuit stems from the un-commanded discharge of Lieutenant Ahern's Sig Sauer P320 firearm on May 19, 2019, when he was on a SWAT team detail with the City of Cambridge Police Department. *See* First Amended Complaint ("FAC") ¶ 11. Lieutenant Ahern was familiar with the P320, having opposed the City's adoption of it as the standard-issue firearm for the

1

police department since 2017.  *Id.* ¶ 8.  Lieutenant Ahern had heard of the safety dangers of the firearm—that it was susceptible to un-commanded discharges, putting the lives of both the officers who carried it and the general public at risk—and had actively campaigned against its use in the Cambridge Police Department.  *Id.*  The City ignored Lieutenant Ahern's warnings and, starting in May 2018, required every officer to carry the P320.  *Id.* ¶ 10.

On May 19, 2019, Lieutenant Ahern was working the SWAT team detail at the Cambridge MayFair festival.  *Id.* ¶ 11.  While sitting in the SWAT van with several other officers, he removed his firearm from its holster in order to make sure that it was sitting properly in the holster.  *Id.* ¶ 43.  While Lieutenant Ahern was holding the firearm in front of him in the SUL position, without him making any contact with the trigger, it discharged.  *Id.*  The bullet struck Lieutenant Ahern's leg, causing a contusion, and ricocheted off his cell phone in his pocket before coming to rest in a helmet on the floor.  *Id.* ¶ 44.

After the un-commanded discharge incident, Lieutenant Ahern was told by the City of Cambridge to admit that he had pulled the trigger.  *Id.* ¶¶ 50, 54.  Lieutenant Ahern refused to state that he had pulled the trigger because he had not done so.  *Id.* ¶ 54.  After the un-commanded discharge incident, Lieutenant was removed from the SWAT team, denied training opportunities, and denied a promotion to Deputy Superintendent.  *Id.* ¶¶ 53, 57-58.

### 2.     Procedural History

On June 16, 2021, Lieutenant Ahern filed this lawsuit.  ECF 1.  Fact discovery opened on January 10, 2022 and was scheduled to be completed by August 15, 2022.  ECF 46.  On February 14, 2022, Cambridge made its initial disclosures.  On March 9, 2022, Lieutenant Ahern sent Cambridge his first set of requests for the production of documents and his first set of interrogatories, requesting that Cambridge respond within 30 days.

On July 7, 2022, counsel for Cambridge and counsel for Lieutenant Ahern conferred regarding the status of discovery. Counsel for Cambridge advised that it would request from the Court a six-month continuance of the fact discovery period because of the large volume of electronically stored information (ESI). Counsel for Lieutenant Ahern advised that a six month continuance—after discovery had already been open for six months without Cambridge producing a single document—was not justified and instead requested a shorter continuance.

On July 11, 2022, the Court extended the deadline for document discovery from August 15, 2022 to September 11, 2022, and extended the deadline for depositions from August 15, 2022 to October 31, 2022. ECF 56. The Court also entered a Stipulated Confidentiality Agreement and Protective Order proposed by the parties. ECF 54.

On July 12, 2022, counsel for Lieutenant Ahern sent counsel for Cambridge proposed search terms for the ESI, to assist Cambridge with the discovery process. Counsel for Cambridge asked about search terms for Sig's ESI. Counsel for Lieutenant Ahern clarified that the search terms were only for Cambridge, as Cambridge had raised the difficulty it was having with the large volume of ESI. On July 20, 2022, counsel for Lieutenant Ahern again requested Cambridge to state whether it was going to use search terms to narrow the ESI it needed to review. On July 25, 2022, counsel for Cambridge responded with the overall number of search term hits. The parties negotiated over the next few weeks but could not come to an agreement on search terms.[1]

---

[1] To the extent that Cambridge argues that Lieutenant Ahern has "caused [the delay] through his representations to the City . . . [wherein he] committed himself to an active role in tailoring responsive searches," such an argument fails for a number of reasons. *See* Cambridge Response to Lieutenant Ahern's Deficiency Letter to Cambridge, attached as Exhibit 2. First, as Lieutenant Ahern's counsel has told Cambridge's counsel numerous times, he has no obligation to assist Cambridge in its review of its own documents for those that are responsive to his requests. But despite having no obligation to do so, Lieutenant Ahern's counsel proactively

On August 11, 2022, Cambridge served its responses and objections to Lieutenant Ahern's first set of interrogatories. On September 12, 2022, Cambridge served its responses and objections to Lieutenant Ahern's first set of requests for production of documents and also made its first production of documents.

By contrast, Lieutenant Ahern has timely complied with his discovery obligations. Lieutenant Ahern made his initial disclosures on February 14, 2022. On July 20, 2022, Lieutenant Ahern served Cambridge with his responses and objections to (i) Cambridge's Interrogatories and (ii) Cambridge's Requests for Production of Documents. On July 28, 2022, Lieutenant Ahern served both Cambridge and Sig with his first production of documents. On August 31, 2022, Lieutenant Ahern served Cambridge with his supplemental responses and objections to Cambridge's Interrogatories.

Even the other defendant in this case, Sig, has timely complied with many of its discovery obligations—though the parties disagree about some of Lieutenant Ahern's requests, which are themselves subject of a separate motion to compel. Sig made its initial disclosures on February 14, 2022. On May 23, 2022, Sig served its Responses and Objections to Plaintiff's Request for the Production of Documents and its Responses and Objections to Plaintiff's

---

reached out to Cambridge's counsel in an attempt to narrow the scope of discovery and make the review easier. Through that process, Lieutenant Ahern's counsel was able to suggest search terms to be run across Lieutenant Ahern's emails that limited the total number of "hits"— documents that would need to be reviewed for that portion of the review—to under 2,588 (with the exception of four terms, for which Lieutenant Ahern had suggested reasonable alternatives). Though even with those search terms, Cambridge would have to review additional electronically-stored information (ESI), those would at least be a start, and would allow Cambridge to quickly determine the most important of Lieutenant Ahern's emails to produce. Moreover, Lieutenant Ahern was willing to work with Cambridge to further limit the search terms to be run across all ESI, to reduce the number of hits. It was Cambridge that failed to follow up on these terms and suggest any alternatives that would lead to fewer hits.

Interrogatories. On August 17, 19, and 24, 2022, Sig produced several documents to Lieutenant Ahern.

On September 18, 2022, counsel for Lieutenant Ahern sent a letter to counsel for Cambridge, pointing out the numerous deficiencies in Cambridge's responses to the interrogatories and requests for production, as well as the document production itself.[2] Lieutenant Ahern pointed out that Cambridge's responses to his interrogatories and requests for production included legally unsupported objections and that Cambridge's document production was incomplete. Most importantly, Lieutenant Ahern pointed out that, because the deadline for document discovery had passed, Cambridge was obligated to complete its review of all potentially responsive documents and make a production to him. Cambridge so far has not produced all responsive documents and, by its own admission, is still reviewing its documents.[3] On October 19, 2022, the parties conferred about the deficiencies in Cambridge's discovery responses and document productions but could not reach agreement.

On October 21, 2022, Cambridge served its First Supplemental Responses to Ahern's First Set of Interrogatories and its First Supplemental Responses to Ahern's First Set of Requests for Production. On October 24, 2022, Cambridge served a supplemental production of documents. These supplemental answers and document productions did not resolve the issues set forth in Lieutenant Ahern's Deficiency Letter.

---

[2] *See* Lieutenant Ahern's Deficiency Letter to Cambridge, attached as Exhibit 1.

[3] *See* Cambridge response to Lieutenant Ahern's Deficiency Letter to Cambridge, attached as Exhibit 2, at 2 ("the City is continuing to review potentially responsive documents").

**ARGUMENT**

Cambridge has utterly failed to discharge its discovery obligations, as shown most clearly by the fact that it has not yet even finished its internal review for responsive documents. By contrast, Lieutenant Ahern provided his discovery responses and produced all responsive documents in a timely manner, long before the document discovery deadline of September 11, 2022. Lieutenant Ahern respectfully requests that the Court order Cambridge to fully answer all of the interrogatories and produce documents responsive to each request because the interrogatories and document requests are relevant to the claims against the City of Cambridge and are not unduly burdensome. *See* Fed. R. Civ. P. 26.

    1.    **Interrogatories**

Cambridge should be compelled to fully answer Lieutenant Ahern's interrogatory requests.

        a.    **Cambridge Must Answer the Interrogatory Asking it to "State the Basis" for Its Argument that Someone Other Than the City Is the Cause of Lieutenant Ahern's Injuries**

Cambridge refused to answer interrogatory 2, requesting that it "state the basis for Cambridge's defense that 'Plaintiff's damages or injuries were caused by others for or over whom Defendant City of Cambridge had no responsibility or control,'" on the grounds that a request to "state the basis" for an argument Cambridge has made "calls for a legal conclusion." This is incorrect. The local rules of this Court allow for a party to request the other party to "state the basis" for a legal argument and require that the answering party, "identify each and every document . . . which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory[,]" among other things. *See* D.

6

Mass. L.R. 26.5(c)(8) ("State the Basis").  The Court should therefore order Cambridge to state the basis for its argument that some other party was responsible for Lieutenant Ahern's injuries.

### b. Cambridge Must Describe Why It Did Not Give Lieutenant Ahern Training Opportunities or Promote Him After the Un-commanded Discharge Incident

Cambridge refused to answer interrogatory 13, requesting that it describe why it did not give Lieutenant Ahern training opportunities or promote him after the un-commanded discharge incident, on the grounds that public records laws prevent it from disclosing such information. This is incorrect.  State public records laws do not override discovery obligations in federal court.  *See Hoyt v. Connare*, 202 F.R.D. 71, 74 (D.N.H. 1996) ("it is generally recognized that, with respect to federal claims, a court is not obligated to apply the privileges provided by a state statute unless the court chooses to do so").

In Cambridge's supplemental answer to interrogatory 13, it answered that interrogatory by referring to its supplemental production of documents.  But the documents in the supplemental production, which appear to be simply documents from Lieutenant Ahern's personnel file, do not describe the reason for the denial of training opportunities or a promotion for Lieutenant Ahern.  The Court should therefore order Cambridge to fully answer interrogatory 13.

### c. Cambridge Must Provide Information About Other Un-commanded Discharges

On October 18, 2019, Cambridge Officer Jacques Desrosiers' ("Officer Desrosiers") P320 discharged without a trigger pull while he was walking down a public street in Cambridge. FAC ¶ 55.  The shooting severely wounded Officer Desrosiers, who has not returned to the CPD

since that date. *Id.*[4] On December 2, 2019, a P320 fired un-commanded while in the possession of Cambridge Detective David Albert as he was putting on his duty belt. *Id.* ¶ 56.

Cambridge refused to answer interrogatories 8 and 11, requesting that it provide information about the Desrosiers and Albert un-commanded discharge incidents and any follow up investigation and discipline. First, Cambridge claims that public records laws prohibit it from making such disclosures. For the reasons articulated above in subsection b, public records laws do not outweigh the federal discovery obligations, and Cambridge must produce the documents. Second, Cambridge claims that the Desrosiers un-commanded discharge incident is irrelevant to Lieutenant Ahern's case. Other un-commanded discharge incidents within the Cambridge Police Department are highly relevant to Lieutenant Ahern's claims for a violation of his First Amendment right to free speech and the violation of the whistleblower protection act, G.L. c. 149 § 185, because Lieutenant Ahern was disciplined for speaking out against the P320 and these incidents are evidence that what he was saying was factually true. Moreover, discovery in civil cases is intentionally broad so that the parties have access to potentially admissible evidence for summary judgment and trial. *See Whittingham v. Amherst College*, 164 F.R.D. 124, 126 (D. Mass. 1995) ("As a general matter, relevancy must be broadly construed at the discovery stage, that is, information is discoverable if there is any possibility it might be relevant to the subject matter of the action."). Admissibility at trial is of course a separate question than whether a party has to produce discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

---

[4] On October 3, 2022, Officer Desrosiers and his wife filed a federal civil action in Boston against Sig Sauer based on the un-commanded discharge of his P320. *See* 22-cv-11674-FDS (Complaint attached as Exhibit 3).

In its supplemental answer to interrogatory 8, Cambridge stated that it produced documents related to Detective David Albert's un-commanded discharge in its supplemental production of documents. Though Cambridge did produce a single report related to Detective Albert's un-commanded discharge, it still has not fully "[d]escribe[d] any disciplinary actions that have been taken" with respect to Albert or Desrosiers, as required by interrogatory 8. Moreover, it did not produce any internal or external correspondence—such as emails or text messages—regarding either shooting. It is inconceivable that a police officer shooting did not generate such correspondence. The Court should therefore order Cambridge to fully answer interrogatories 8 and 11.

### 2. Requests for Production of Documents

The Court should order Cambridge to fully answer Lieutenant Ahern's Requests for the Production of Documents and produce responsive documents.

#### a. Cambridge Must Produce Documents Showing Discussions of the P320

Cambridge must produce documents showing internal discussions of the P320. Cambridge has objected to producing documents relating to internal discussions of the P320—requested in request for production 2, 8, 9, 10, and 17—on the grounds that (i) the documents were "obtained in anticipation of litigation" and (ii) the "city has not completed its investigation of this matter."

First, the objection based on privilege fails because there is no privilege protecting documents *obtained* in anticipation of litigation; only those *prepared* in anticipation of litigation. Second, to the extent Cambridge is arguing that the ongoing investigation of the matter means that it cannot produce documents for fear that the investigation would be jeopardized, that fear is unfounded because, unlike documents showing an ongoing investigation into criminal activity,

9

here, the investigation into Lieutenant Ahern would not be jeopardized by the disclosure of records in a civil case. *See Gulluni v. United States Attorney for District of Massachusetts*, 2022 WL 4084224 at 4-5 (D. Mass. Sept. 6, 2022) ("The privilege [against discovery of information related to an ongoing law enforcement investigation] is, however, not absolute and is subject to balancing the federal government's interest in preserving the confidentiality of sensitive law enforcement techniques against the requesting party's interest in disclosure"). Moreover, any potential risk of jeopardizing the investigation would be mitigated by the fact that the documents can be produced under the Protective Order. To the extent Cambridge is arguing that the ongoing investigation of the matter means that Cambridge simply has not finished reviewing all potentially responsive documents, that objection fails because Cambridge was required to produce all responsive documents by September 11, 2022. *See Angiodynamics, Inc. v. Biolitec AG*, 991 F.Supp.2d 283, 290 (D. Mass. 2014) (noting that courts can sanction parties who do not comply with discovery deadlines). Cambridge has had more than enough time to complete a thorough review and cannot get more time simply because it failed to allocate proper resources to its discovery obligations throughout the past nine months.

        **b.**    **Cambridge Must Produce Documents Relating to the May 19, 2019 Un-commanded Discharge**

The Court should order Cambridge to produce all documents relating to the May 19, 2019 un-commanded discharge incident. Cambridge has objected to producing these documents, including documents relating to its investigation of the incident—requests for production 2, 3, and 10—because (i) the "city has not completed its investigation of the matter." As stated above, the objection based the fact that Cambridge is still reviewing documents fails because the

10

document discovery period has expired and Cambridge has not articulated a valid reason for failing to dedicate sufficient resources to complete its review on time.[5]

The documents produced by the City of Cambridge to date—in both its initial production of documents and its supplemental production of documents—include only a handful of communications discussing Lieutenant Ahern's un-commanded discharge incident that were not sent to or from Lieutenant Ahern. It is highly unlikely the City of Cambridge and the Cambridge Police Department had so few conversations about Lieutenant Ahern's discharge incident that did not involve Lieutenant Ahern. The Court should therefore produce all previously unproduced communications concerning Lieutenant Ahern's un-commanded discharge.

    **c.**    **Cambridge Must Produce Documents Relating to the Discipline of Lieutenant Ahern**

The Court should order Cambridge to produce all documents relating to the discipline of Lieutenant Ahern, including the denial of training opportunities and the failure to promote him. Cambridge has objected to producing these documents—requests for production 2, 3, and 10—because (i) the documents were "obtained in anticipation of litigation" and (ii) the "city has not completed its investigation of this matter."

As stated above, there is no privilege protecting documents ***obtained*** in anticipation of litigation. Moreover, the objection based on an ongoing investigation fails because Cambridge

---

[5] To the extent that Cambridge argues that these documents are related to an ongoing law-enforcement investigation that requires the documents to be withheld, that argument also fails for the reasons listed above. Namely, disclosing documents related to the investigation of Lieutenant Ahern's un-commanded discharge to Lieutenant Ahern, under the Protective Order, would not endanger the investigation in any way.

has not articulated a reasonable excuse for why it has failed to fully review its documents within the nine-month discovery period.[6]

Though Cambridge's supplemental document production contained documents from Lieutenant Ahern's personnel file, it contained no internal emails or text messages relating to the discipline. It is highly unlikely that Lieutenant Ahern's personnel file contains all the documents related to his discipline (e.g., internal emails and text messages related to the shooting, the investigation, and the discipline). The Court should therefore order Cambridge to produce all documents relating to the discipline of Lieutenant Ahern.

### d. Cambridge Must Produce Documents Relating to Other Un-commanded Discharge Incidents

Cambridge must produce all documents relating to other un-commanded discharge incidents, including those of Officer Jacques Desrosiers and Detective David Albert. Cambridge has objected to producing these documents—requested in requests for production 2, 4, 5, 12, and 17—because (i) these documents are not relevant and (ii) the "city has not completed its investigation of this matter."

These other incidents are clearly relevant to Lieutenant Ahern's claims against the City. The core of Lieutenant Ahern's claims against Cambridge is that he was retaliated against for expressing concerns about the safety of the P320. Other un-commanded discharge incidents are evidence that Lieutenant Ahern's concerns were legitimate, which gives further support to his argument that he should not have been punished for these concerns. Therefore, the objection to

---

[6] Further, to the extent that Cambridge argues that these documents are related to an ongoing law-enforcement investigation that requires the documents to be withheld, that argument also fails for the reasons listed above.

producing discovery relevant to the un-commanded discharges of Jacque Desrosiers' P320 (and any other un-commanded discharges) should be withdrawn.

Moreover, the objection based on an ongoing investigation fails because Cambridge has not articulated a reasonable excuse for why it has failed to fully review its documents within the nine-month discovery period.[7]

Though Cambridge's supplemental document production contained some reports of the un-commanded discharge of Detective Albert, Cambridge has not stated whether these are the only documents related to these other un-commanded discharge incidents. It is highly unlikely that there are not more documents related to these incidents. Therefore, Cambridge must produce all documents relating to other un-commanded discharge incidents.

      e.    **Cambridge Must Produce Communications Between Cambridge and Sig**

The Court should order Cambridge to produce all communications between Cambridge and Sig. Cambridge has objected to producing these documents—requests for production 2, 4, 6, 7, 9, and 16—because (i) the communications related to other discharge incidents are not relevant and (ii) the "city has not completed its investigation of this matter."

As stated above, the documents related to other discharge incidents are clearly relevant because they show that Lieutenant Ahern's concerns about the P320 were founded. Moreover, the objection based on an ongoing investigation fails because Cambridge has not articulated a

---

[7] Further, to the extent that Cambridge argues that these documents are related to an ongoing law-enforcement investigation that requires the documents to be withheld, that argument also fails for the reasons listed above.

reasonable excuse for why it has failed to fully review its documents within the nine-month discovery period.[8]

The documents produced by the City of Cambridge to date do not include more than a handful of communications between Cambridge and Sig. Considering that Cambridge purchased tens of thousands of dollars' worth of products from Sig and considering that multiple Cambridge officers and a Somerville officer were shot by Sig guns (not to mention all of the un-commanded P320 discharges around the country, as outlined in the Complaint), it is highly unlikely that there are not more written communications between the parties. Therefore, Cambridge should produce all previously unproduced correspondence involving Sig and Cambridge.

### f. Cambridge Must Produce Lieutenant Ahern's Personnel File

Cambridge must produce Lieutenant Ahern's personnel file. Cambridge initially objected to producing his personnel file based on state public records laws. In its supplemental production, Cambridge produced what appears to be at least a portion of Lieutenant Ahern's personnel file. To the extent that Cambridge has not produced Lieutenant Ahern's full personnel file, it must do so.

### g. Cambridge Has Improperly Redacted Non-Privileged Portions of Documents

Several of the documents produced by the City of Cambridge have been improperly redacted. For example, "City Response Production 1, 00061" is an email chain in which the most recent email went to Lieutenant Ahern. Nevertheless, Cambridge has redacted the earlier

---

[8] Further, to the extent that Cambridge argues that these documents are related to an ongoing law-enforcement investigation that requires the documents to be withheld, that argument also fails for the reasons listed above.

emails (further down the chain) that Lieutenant Ahern received. Because Lieutenant Ahern received these documents, they are not privileged, and should be produced.

There are several additional examples of improper redactions among the documents Cambridge has produced to date. For example, the document bearing Bates stamp "City Response Production 1, 00445" is an email chain attaching the Cambridge Firearm Policy, but the bodies of every email on the chain, as well as the entirety of each page of each attachment (including the Firearm Policy) have been redacted. "City Response Production 1, 00528" has also been completely redacted. It is highly unlikely that the redacted portions of these documents, and the other documents that have been similarly redacted, are privileged. Therefore, these documents—and the other documents similarly redacted improperly—should be produced in an unredacted form.

Some of the redacted documents have unredacted portions that suggest the documents are both highly relevant and not privileged. "City Response Production 1, 00549" is an email chain between Mushlin, Thomas Flynn, and Hector Vicente, with the subject "RE: DRAFT Order: Sig p320 upgrade/recall." None of these individuals is an attorney, yet the entirety of the email other than the to/from/subject/date/attachments list has been improperly redacted, presumably based on a claim of privilege. Another email, "City Response 1, 00594" is an email from Flynn to James Mulcahy, with the subject "P320 with Manual Safety: Sergeant Sennott Request." Similarly, an attorney was neither the sender nor recipient of the document, but it is fully redacted. These documents should be produced in an unredacted form.

## **CONCLUSION**

For the above reasons, Lieutenant Ahern requests that this Court order the defendant, the City of Cambridge, to provide complete responses to his discovery requests and produce responsive, un-redacted documents.

                THOMAS R. AHERN,

                By his attorneys,

                */s/ Peter K. Levitt*
                Peter K. Levitt (BBO# 129930)
                Michelle R. Pascucci (BBO# 690889)
                David Kete (BBO# 690415)
                DONNELLY, CONROY & GELHAAR, LLP
                260 Franklin Street, Suite 1600
                Boston, Massachusetts 02110
                (617) 720-2880
                pkl@dcglaw.com
                mrp@dcglaw.com
                djk@dcglaw.com

                */s/ Jeffrey S. Bagnell*
                Jeffrey S. Bagnell
                Federal Bar No. CT18983
                Jeffrey S. Bagnell, Esq., LLC
                55 Post Road West
                Westport, Connecticut 06880
                (203) 984-8820
                jeff@bagnell-law.com

October 27, 2022

## CERTIFICATE OF CONFERENCE

I hereby certify that on October 19, 2022, pursuant to Local Rule 37.1(a), I conferred with counsel for the City of Cambridge about the issues raised in the preceding Motion to Compel.  This conference followed a deficiency letter sent to the City of Cambridge on September 23, 2022.

/s/ Peter K. Levitt
Peter K. Levitt

## CERTIFICATE OF SERVICE

I hereby certify that this filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: October 27, 2022

/s/ David Kete
David Kete