# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

ELVIS RAMON GREEN-BERRIOS,

Plaintiff,

v.

SIG SAUER, INC.,

Defendant.

CIVIL NO. 22-1002 (JAG)(HRV)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. INTRODUCTION

Plaintiff Elvis Ramon Green-Berrios (hereinafter "plaintiff" or "Mr. Green-Berrios"), a police officer, sued Sig Sauer, Inc. (hereinafter "Sig Sauer" or "defendant") seeking compensation for injuries suffered by him due to the alleged un-commanded discharge of his police-issued Sig Sauer P320 pistol. Sig Sauer moves *in limine* to exclude the testimony of plaintiff's expert, Timothy Hicks (hereinafter "Hicks"), pursuant to Fed. R. Evid. 702. Plaintiff opposed and Sig Sauer replied. The motion *in limine* was referred to me for report and recommendation. For the reasons set forth below, I recommend that the motion *in limine* be DENIED.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a Puerto Rico Police Bureau officer, alleges that on the evening of January 6, 2021, his duty Sig Sauer P320 9mm sidearm discharged without the trigger

1

being pulled and while holstered, as he was removing it from his waistband. The incident allegedly occurred after officer Green-Berrios returned home from a Three Kings Day family gathering. The bullet struck Green-Berrios in the thigh causing injuries, including a broken femur, nerve damage and scarring. It is alleged that plaintiff fell to the ground during the incident, lost consciousness and woke up at the hospital.

On January 24, 2022, plaintiff filed his complaint against Sig Sauer bringing, among others, claims of negligence, defective design, breach of implied and express warranties, and intentional infliction of emotional distress. (Docket No. 1). Defendant Sig Sauer answered the complaint on March 28, 2022, generally denying liability and asserting several affirmative defenses. (Docket No. 14). Sig Sauer filed its motion *in limine* on September 27, 2023, seeking to exclude the testimony and opinion of plaintiff's expert. (Docket No. 53). In it, Sig Sauer argues that the proposed expert does not have the necessary qualifications to render the opinion he has issued affirming that the Sig Sauer P320 suffers from design and manufacturing defects that cause it to discharge without a trigger pull. (Docket No. 53). Defendant further argues that the opinion should be excluded since it is based on an unreliable methodology. (*Id.*)

Simultaneously with the filing of the motion *in limine*, Sig Sauer filed a motion for summary judgment. (Docket No. 54). The basis for said motion assumes the exclusion of plaintiff's expert as a pre-condition for the Court's entering of judgment as a matter of law. The motion for summary judgment, however, has not been referred to me. Plaintiff opposed the motion *in limine* on December 11, 2023. (Docket No. 70). Sig Sauer replied on January 1, 2024. (Docket No. 72).

## III. APPLICABLE LAW AND DISCUSSION

### A. Contentions of the Parties

#### *1. Defendant Sig Sauer*

Sig Sauer argues that Hicks is not qualified to opine about defects in the design and manufacturing of firearms because he is a mechanical engineer who spent most of his career in the automotive industry and has never worked for a company that designs or manufactures firearms. Further, Sig Sauer maintains that Hicks has never personally designed or manufactured a firearm or any of its components; has not toured a firearms manufacturing plant; and has not witnessed the process of a firearm being manufactured or assembled. Sig Sauer also attacks the qualifications of Hicks for his lack of published articles or presentations on the topic of firearms design and manufacturing, and for not belonging to any committees or professional organizations that develop firearm testing standards. Lastly, Sig Sauer claims that Hicks has never inspected the internal workings of a P320 pistol or the internal components or design drawings of similar pistols.

Alternatively, Sig Sauer avers that even if the Court finds that Hicks has the necessary qualifications, his testimony should nonetheless be excluded because his opinions rest solely on his *Ipse Dixit* and are unreliable. Hicks's opinions are inadmissible, Sig Sauer further contends, because he did not conduct any testing—or cite studies, testing or analysis by other experts—to support his purely theoretical conclusion that design and manufacturing defects are the reason the pistol at issue may fire without a trigger pull. Additionally, the methodology that Hicks employs has not been the subject of publication and peer review, and Hicks has not shown that it is generally accepted within the relevant community. Moreover, Hicks did not identify the error rate for the

3

relevant methodology. Sig Sauer also faults Hicks for not attempting to rule out the most obvious cause of the discharge, an accidental pull of the trigger.

In further support of its position, Sig Sauer alerts the Court that three other federal district courts, specifically the Southern District of New York, the Eastern District of Texas, and the Western District of Kentucky, have precluded Hicks from offering opinions that "were nearly identical to those he seeks to offer in this case." (Docket No. 53 at 2).[1]

### 2. *Plaintiff Green-Berrios*

In opposition, Plaintiff asserts that Sig Sauer is wrong in claiming that Hicks is not qualified because he has no formal education or experience in designing or manufacturing firearms. According to plaintiff, courts routinely qualify experts to render opinions in products liability cases when such experts have the education or background that allow them to analyze a specific set of circumstances, even though they have no actual experience in the manufacturing or designing of the particular product. Plaintiff highlights that Hicks is a licensed professional engineer with a diverse background in mechanical design and systems evaluations in the automotive industry wherein in his various roles, he was responsible for the design, manufacturing, testing and validation of

---

[1] *See, e.g., Jinn v. Sig Sauer, Inc.*, 20 Civ. 1122 (PGG)(RWL), 2023 WL 5972507, 2023 U.S. Dist. LEXIS 162960 (S.D.N.Y. Sept. 13, 2023); *Hilton v. Sig Sauer, Inc.*, Civil Action No. 21-CV-00441-MJT, Docket No. 65 (E.D. Tex. June 8, 2023); *Mayes v. Sig Sauer, Inc.*, No. 1:19-CV-00146-GN-HBB, 2023 WL 2730264, 2023 U.S. Dist. LEXIS 54976 (E.D. Ky. Mar. 30, 2023). *But see Guay v. Sig Sauer, Inc.*, 610 F. Supp. 3d 423 (D.N.H. 2022)(denying motion to exclude Hicks as expert).

mechanical systems. Relevantly, plaintiff submits that Hicks holds state firearms certifications and certificates of eligibility from state agencies in California and Massachusetts for analyzing and performing firearm certification testing. He is also a Sig Sauer certified P320 armorer. Even more pertinent, plaintiff claims, is Hicks's experience in the metallurgic process "Metal Injection Molding (MIM)" for machining and forming metal parts. Such experience allows the expert to analyze the machining finishes of the interior metal parts of the firearm at issue. In sum, plaintiff reiterates that Hicks is qualified, as found by the Court in *Guay v. Sig Sauer, Inc.*, supra, n.1, and it matters not that he does not have actual design-and-manufacturing-of-firearms experience.

Regarding the reliability of the opinion rendered, plaintiff first submits that Hicks applied a different methodology than the one he used in the cases where his testimony was excluded. For instance, in this case, Hicks was able to conduct a physical inspection of the P320 pistol involved in the incident as well as several other P320s that had allegedly discharged un-commanded. Also different from prior cases, says plaintiff, is that Hicks performed an examination of the pistol by disassembling it, and measuring the internal components microscopically and through a CT scan. According to plaintiff, this physical/visual inspection allowed Hicks to assess whether the security and firing mechanisms of the pistol deviated in measurements and machining finishes from the manufacturing design blueprints of the P320. Furthermore, the testimony of the expert will assist the jury in understanding the manufacturing specs of these internal components and how they should interact to avoid a discharge. Ultimately, the expert

would explain how the inner parts of the pistol did not engage properly in accordance with the manufacturer's specs and measurements.

With respect to the argument that Hicks failed to rule out the possibility of an accidental trigger pull, plaintiff argues that such a possibility does not factor into the methodology for determining design or manufacturing defects and that, in any event, such a theory is a question for the jury.

As per plaintiff's argument, an expert is not required to consider every possible factor for his or her opinion to be deemed sufficiently reliable. Nor is the expert required to test the firearm to determine if the pistol discharged by itself specially where, as here, the expert based his opinion in part on tests previously performed by Sig Sauer such as rough handling and vibrations tests. The lack of peer review of the methodology used should not be dispositive either, plaintiff argues.

Lastly, plaintiff relies on Fed. R. Evid. 402 and 403 to move to preclude defendant from referencing before the jury that other courts have excluded Hicks's testimony because he used a different methodology.

**B. Analysis**

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony at trial. It provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

6

    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert evidence has the burden of establishing both its reliability and relevance. *Martinez v. United States*, 33 F.4th 20, 24 (1st Cir. 2022).

  When presented with a challenge to the admissibility of expert testimony, the Court "must determine whether the expert witness is qualified and has the specialized knowledge that will 'assist the trier of fact to understand evidence or to determine a fact in issue.'" *Bogosian v. Mercedes-Benz of N. Am.*, 104 F.3d 472, 476 (1st Cir. 1996)(*quoting* Fed. R. Evid. 702). In this two-part inquiry, the Court must initially assess the qualifications of the proposed expert by "knowledge, skill, experience, training or education." *Id.* As to the second part of the inquiry, in *Daubert*,[2] "the Supreme Court assigned to trial judges the role of gatekeepers to screen expert testimony that although relevant, was based on unreliable [] methodologies." *Gonzalez-Perez v. Gomez-Avila*, 296 F. Supp. 2d 110, 113 (D.P.R. 2003).

  In discharging its gatekeeper responsibility to determine reliability, the Court must consider whether: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has

---

[2] *Daubert v. Merrell Down Pharms., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469, (1993).

7

applied the principles and methods reliably to the facts of the case." *Negron v. Worthinton Cylinder Corp.*, Civil No. 17-1985 (RAM), 2021 WL 1199014, 2021 U.S. Dist. LEXIS 63251 at *7 (D.P.R. Mar. 30, 2021)(*quoting Gonzalez-Arroyo v. Doctor's Ctr. Hosp. Bayamon, Inc.*, Civil No. 17-1136 (RAM), 2020 U.S. Dist. LEXIS 140016, 2020 WL 4516012 at *2 (D.P.R. Aug. 5, 2020)). "The Rule 702 inquiry is a 'flexible one', . . . , and there is no particular procedure that the trial court is required to follow in executing its gatekeeping function under *Daubert*." *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002).

### 1. Hicks is qualified to offer an opinion on account of his education, background, and experience.

Hicks has a Master of Science degree in mechanical engineering and has a diverse background in mechanical design and systems evaluations. The bulk of his career, however, has been in the automotive industry, wherein he was responsible for the design, manufacturing, testing and validation of vehicle systems. Relevantly, as part of his professional analysis and consulting experience in the later part of his career, Hicks has performed numerous investigations and certification tests on firearms and firearm safety devices and for incidents involving firearms, including other Sig Sauer cases. He is a member of the Society of Automotive Engineers (SAE), the American Society of Mechanical Engineers (ASME), and the National Society of Professional Engineers. He holds certificates of eligibility from California and Massachusetts for analyzing and performing firearm certification testing. Hicks is also a Sig Sauer certified P320 armorer.

I find that the above-outlined educational background and professional experience are sufficient to satisfy the requirement that a proposed expert witness be

qualified by "knowledge skill, experience, training, or education." Fed. R. Evid. 702. Sig Sauer's contention that Hicks is not qualified because he has no specific experience in firearm manufacturing and design misses the mark. In a products design case, an expert is not precluded from offering an opinion simply because he has no specific experience in the design or manufacturing of the product at issue. *See Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1175 (1st Cir. 1992)("Rule 702 does not require specific educational training in the area of expertise[;]. . . an expert need not have design experience with the particular product in order to render expert opinion about the unreasonableness of its design."); *see also Perez-Garcia v. P.R. Ports Auth.*, Civil No. 08-1448 (GAG), 2012 WL 12552257, 2012 U.S. Dist. LEXIS 191575 at *12 (D.P.R. Jul. 5, 2012)(finding proposed mechanical engineer qualified to testify as an expert despite lack of previous specific experience with golf carts). For example, a mechanical engineer who lacked specialized experience with firearms, was qualified to testify as to firearms defects, because his experience, education and training rendered him competent to opine on a variety of mechanical topics. *Palatka v. Savage Arms, Inc.*, 535 Fed. Appx. 448, 455 (6th Cir. 2013); *see also Mathews v. Remington Arms, Co.*, No. 07-1392, 2009 U.S. Dist. LEXIS 41808 at *3 (W.D. La., May 2, 2009)(finding mechanical engineer qualified because he had extensive experience as a consultant in cases involving firearm mechanical failures and even though he had not designed firearms or component parts.).

In reaching my conclusion, I agree with the Court in *Guay v. Sig Sauer, Inc.*, 610 F. Supp. 3d at 433, that "Hicks is qualified to opine as to all aspects of his opinion." As found by the Court in *Guay*, Hicks "specializes in the technicalities of product performance and failure" and "his training and experience provides a basis for expertise

9

in the mechanical workings of a product, including a gun." *Id.* Further, I am persuaded by the reasoning of Judge McCafferty that "there is no indication that [the] mechanics of guns are so specialized that a person requires a lifetime of experience specifically with guns or a particular gun to be able to opine about its design or manufacturing flaws." *Id.* Here, Hicks possesses not only generalized mechanical training and experience, but also particular familiarity with the inner workings of firearms, including the Sig Sauer P320.

Moreover, even some of the prior judicial decisions Sig Sauer relies on in moving to preclude Hicks have found him to be qualified. *See Mayes v. Sig Sauer, Inc.*, No. 1:19-CV-00146-GN-HBB, 2023 WL 2730264, 2023 U.S. Dist. LEXIS 54976 at *11 (E.D. Ky. Mar. 30, 2023). *Cf. Jinn v. Sig Sauer, Inc.*, 20 Civ. 1122 (PGG)(RWL), 2023 WL 2919558, 2023 U.S. Dist. LEXIS 64542 at *40-41 (S.D.N.Y. Apr. 12, 2023)(the court remained dubious about Hicks's qualifications while noting that there was some support for finding him qualified, but determined it needed not resolve the issue); *Hilton v. Sig Sauer, Inc.*, Civil Action No. 21-CV-00441-MJT, Docket No. 65 (E.D. Tex. June 8, 2023)(same).

### *2. The opinions offered by Hicks are supported by a reliable methodology; his testimony is admissible.*

Hicks conducted an inspection of the P320 pistol at issue in this case. The pistol was disassembled which in turn permitted a visual physical inspection. In addition, CT scans were also captured. Hicks obtained images and took measurements of the individual components using a stereomicroscope. The examination and analysis conducted by Hicks led him to conclude that plaintiff's firearm had several defects consistent with those found in other P320s which were also alleged to fire without a

trigger pull. For instance, Hicks found that the sear and striker foot portion of the striker pin both exhibited inconsistencies on the surfaces that are in contact with each other, "minimizing the actual contact surface area needed to keep the parts engaged until the trigger is pulled." (Docket No. 70-1 at 5). The identified surface quality issue combined with a misalignment of interfacing sear step and striker foot (as per design specifications) were found to be the likely cause of the striker becoming disengaged from the sear. (*Id.* at 19). Further, according to Hicks, another internal mechanism—the striker safety lock—did not meet drawing specifications, thus creating a condition that would fail to stop the striker from moving forward. (*Id.*). Hicks summarized his opinion as follows:

> There are two features within the design of the P320 that must fail to allow an un-commanded discharge to occur. These are defined as "internal safety features" by Sig Sauer. First, the striker needs to be released by the sear, which based on the defects discussed in this report, is a precarious interface. Due to the minimal amount of contact between the two components (sear and striker), any vibration, inertia, or jostling of the firearm can cause the striker to be released. Second, the safety lock, which also exhibits defects and a compromised interface with the striker stop, does not stop the striker from making contact with a cartridge in the chamber. Because of the uncontrolled, or "sloppy" mechanism of the P320 firearm, un-commanded discharges will occur, as evident with numerous incidents across the country, with various law enforcement and experienced firearm personnel.

(*Id.* at 20).

The crux of Sig Sauer's argument in this regard is that Hicks has not tested the above hypothesis that the alleged design and manufacturing defects are responsible for the alleged un-commanded discharge. Sig Sauer specifically faults Hicks for "not conducting any testing, modeling, or analysis to determine the effect of the alleged defects on the operation of the P320 . . . [and] to demonstrate that his alleged defects can actually cause a P320 pistol to discharge without a trigger pull." (Docket No. 53 at 12).

11

Aside from no testing, Sig Sauer labels Hicks's opinion as unreliable for its lack of peer review and publication, potential rate of error, or general acceptance in the relevant community. Simply put, Sig Sauer claims that Hicks relies only on his *ipse dixit* and that his failure to rule out the possibility of an accidental pull of the trigger likewise makes his methodology questionable. I disagree with the defendant's contention.

Concededly, "[r]eliability is a flexible inquiry, allowing for consideration of factors like whether the expert's methodology has been objectively tested; whether it has been subjected to peer review and publication; the technique's known or potential error rate; and whether the expert's technique has been generally accepted within the relevant industry." *Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 98 (1st Cir. 2020)(*citing Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 14 (1st Cir. 2011)). But these factors that the Supreme Court mentioned in *Daubert*, "do not constitute a definitive checklist or test." *Kuhmo Tire Co. v. Charmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)(*quoting Daubert*, 509 U.S. at 593). "At the end of the day . . . 'the focus must be solely on principles and methodology." *Lawes*, 963 F.3d at 98 (*quoting Daubert*, 509 U.S. at 594-95).

In the First Circuit, and in many others, testing is not a pre-requisite to the admission of expert testimony. *Quilez-Velar v. Ox Bodies, Inc.*, 823 F.3d 712, 718-19 (1st Cir. 2016)(collecting cases). Certainly, testing and replication would have added weight and credibility to his findings and conclusions, but their absence do not make Hicks's testimony inadmissible. Indeed, I do not find that the opinion is based solely on Hicks's *ipse dixit*. On the contrary, the opinion rests on his observations during a physical inspection of the actual firearm in this case as well as other model P320 pistols that

allegedly discharged uncommanded and Hicks personally inspected in the course of his consulting career. In arriving at his conclusions, he conducted CT scans and microscopic imaging. Hicks also took measurements of the internal components of the firearm and compared said measurements to the design specifications before highlighting deviations and misalignments to arrive at his ultimate opinion. As Judge McCafferty noted, since "these are objective, observable characteristics of the guns, Hicks's opinion is not premised on his 'ipse dixit.'" *Guay*, 610 F. Supp. 3d at 433.

When the above is considered in tandem with the fact that Hicks has both general experience in the manufacturing process as well as some specialized knowledge in MIM and firearms, the lack of testing does not preclude a finding that his proffered testimony rests on a reliable foundation.[3] *See Woods Hole Oceanographic Inst. V. ATS Specialized, Inc.*, 557 F. Supp. 3d 261, 272 (D. Mass. 2021)(rejecting a magistrate judge's recommendation to exclude an expert for failure to specifically test the subject trailer). Thus, there appears to be an adequate fit between Hicks's methods and his conclusions so that his testimony should be allowed to be presented to the trier of fact and be subjected to the classic battle of the experts and the adversarial process.

After all, it has been held that "[n]otwithstanding the deep dive that courts often take to adequately assess the reliability of expert methodology, especially in highly

---

[3] Hicks has expressed that it is impractical to replicate the conditions that would allow for physical testing of his hypothesis. To the extent that Sig Sauer suggests that for a finding of reliability, Hicks had to basically recreate the specific scenario that would in fact cause an un-commanded discharge, I find such argument to be meritless. "Where physical testing is not feasible, 'observations coupled with expertise generally may form the basis of an admissible expert opinion.'" *Allstate Indem. Co v. Dixon*, 932 F.3d 696, 701 (8th Cir. 2019)(quoting *Shuck v. CNH Amm., LLC*, 498 F.3d 868, 875 (8th Cir. 2007)).

13

technical industries, they must stop short of weighing the evidence, evaluating credibility, or unnecessarily picking sides in a battle between experts." *Lawes*, 963 F.3d at 98. Nothing in this case prevents Sig Sauer from presenting its own expert to refute Hicks's testimony, or from confronting him through cross examination with matters that go to credibility or the weight, if any, that the jury will assign to his opinions. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also Milward*, 639 F.3d at 15 ("So long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversarial process.").

This rationale applies with equal force to Sig Sauer's argument that Hicks failed to rule out what it contends is the most obvious explanation for the discharge—that officer Green-Berrios accidentally pulled the trigger. The jury will have to assess the credibility of plaintiff's account of events and the weight that it will assign to Hicks's testimony when defendant inevitably brings up its theory of an accidental trigger pull. Such a scenario does not make the proffered expert opinion unreliable with respect to methodology. In his deposition, Hicks readily admitted that if the trigger was pulled and the pistol discharged, the discharge would not be related to any manufacturing defect. (Docket No. 53-16 at 148-149). But his expert opinion does not need to factor in that possibility since he has been hired to opine only as to the possibility of an uncommanded discharge. "*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998).

14

**3. The request for an order prohibiting defendant from referencing preclusion of the expert in prior cases should be denied for it has been waived.**

Other than generally arguing that Sig Sauer should be precluded from making any reference to prior cases in which Hicks was not allowed to testify because it would not be probative of his reliability in this case, plaintiff does not significantly develop the argument or cite authority. Plaintiff maintains that such argument should be prohibited because it would be misleading and confusing. This argument should be deemed waived. *United States v. Zanino*, 895 F.2d 1, 17 (1st Cir. 1990)("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.")

## IV. CONCLUSION

In view of the above, I recommend that Sig Sauer's motion *in limine* be DENIED.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within 14 days**. Failure to file timely and specific objections is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**

In San Juan, Puerto Rico this 27th day of February, 2024.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE

15