# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS R. AHERN, | : |
| | : |
| Plaintiff, | :  C.A. No. 21-11007-DJC |
| | : |
| v. | : |
| | : |
| SIG SAUER, INC., AND CITY OF CAMBRIDGE, | : |
| | : |
| Defendants. | : |

**Plaintiff's Responses and Objections to Defendant SIG Sauer, Inc.'s Interrogatories**

Pursuant to Federal Rule of Civil Procedure 26 and 33 and Local Rule 33.1, plaintiff Thomas R. Ahern ("Lieutenant Ahern") hereby answer the Interrogatories (the "Interrogatories") of defendant SIG Sauer, Inc. ("SIG Sauer"), dated March 15, 2021, as follows.[1]

**Preliminary Statement and Reservations**

1. The answers to the Interrogatories and any documents produced in connection with the answers to the Interrogatories are limited to the extent that the documents are in Lieutenant Ahern's possession, custody, or control.

2. Lieutenant Ahern's responses are made on the basis of a reasonable, diligent search.

3. Lieutenant Ahern reserves the right to supplement these objections and responses in accordance with Federal Rule of Civil Procedure 33 either based on further facts that come to light or if SIG Sauer asserts an interpretation of any Interrogatory that differs from Lieutenant

---

[1] Unless otherwise stated, all definitions are adopted from the Interrogatories served upon SIG Sauer by Lieutenant Ahern on March 9, 2022, and the Interrogatories served upon Lieutenant Ahern by SIG Sauer on March 15, 2022.

Ahern's interpretation or understanding.

4.      Lieutenant Ahern reserves all objections to the competency, relevancy, materiality, and admissibility of the answers to the Interrogatories, any of the information disclosed in the answers to the Interrogatories, and/or any documents produced in connection with the answers to the Interrogatories.

5.      The answers to the Interrogatories do not represent any concession, agreement, or admission that any allegation or other factual implication contained in any individual interrogatory is true or meritorious.

## Responses and Specific Objections

### Interrogatory No. 1

Describe all materials You read or reviewed related to the P320 model pistol prior to being issued the Subject Pistol by Your employer, the Cambridge (MA) Police Department, including all advertisements, marketing materials, websites, and any other information about the P320 model pistol.

### Response No. 1

Lieutenant Ahern objects to Interrogatory No. 1 on the grounds that it is vague and ambiguous, seeks information that is neither relevant to the claims alleged against SIG Sauer nor likely to lead to the discovery of admissible evidence against SIG Sauer, and is not proportional to the needs of the case. Subject to and without waiving his objections and reservations, Lieutenant Ahern answers as follows:

As described in Response No. 2 *infra*, Lieutenant Ahern conducted general internet research on the P320, drop fires of the P320, and P320 problems and safety issues. Lieutenant Ahern cannot recall each and every website or article he reviewed, but he recalls having read or viewed the following materials:

- Todd South, *The Army's New Handgun Is Undergoing Final Testing Before It's Issued to Soldiers*, Army Times, Sept. 17, 2017, *available at* https://www.armytimes.com/news/your-army/2017/09/17/the-armys-new-handgun-is-undergoing-final-testing-before-its-issued-to-soldiers/.

- *Sig P320 Hammer Test*, Legally Armed America, Aug. 13, 2017, *available at* https://www.youtube.com/watch?v=A6N15rzP-AA.

- Andrew Touhy, *Sig Sauer P320 Fails Drop Test*, Omaha Outdoors, Aug. 7, 2017, *available at* https://www.omahaoutdoors.com/blog/sig-sauer-p320-fails-drop-test/.

- Literature issued by SIG Sauer regarding the P320 Voluntary Upgrade Program, including materials available at https://www.sigsauer.com/p320-voluntary-upgrade-program/ and https://www.sigsauer.com/support/p320-voluntary-upgrade/#video.

In addition, while Lieutenant Ahern was visiting the store Law Enforcement Equipment, Inc. in Waltham, Massachusetts, employee Walter Duddy warned him of problems involving the P320 and showed Lieutenant Ahern the Owners' Manual for an older version of the P320, which contained a page indicating that the pistol could fire when dropped and that the chamber should be empty unless the user was actually firing.

**Interrogatory No. 2**

Describe the "research" You conducted as alleged in Your Complaint, including the methods You utilized, the websites, publications or materials You reviewed, and the sources on which You relied in reaching Your conclusion regarding the safety aspects of the P320 model pistol prior to being issued the Subject Pistol by Your employer, the Cambridge (MA) Police Department.

**Response No. 2**

Lieutenant Ahern objects to Interrogatory No. 2 on the grounds that it is vague and ambiguous, seeks information that is neither relevant to the claims alleged against SIG Sauer nor likely to lead to the discovery of admissible evidence against SIG Sauer, and is not proportional to the needs of the case. Subject to and without waiving his objections and reservations, Lieutenant Ahern answers as follows:

As described in further detail in Response No. 1, *supra*, Lieutenant Ahern conducted internet research as to safety issues concerning the P320 and read or viewed materials noted therein.

Lieutenant Ahern made efforts to speak with individuals who had previously used the P320. Because the firearm was relatively new at the time, however, he had difficulty finding individuals who had experience with the firearm. In particular, he recalled speaking to Walter Duddy of Law Enforcement Equipment, Inc., which conversation is referenced in Response No. 1 *supra*, and members of the CPD and Cambridge Fire Department who had used the P320.

As part of his research, from around Fall 2017 to around Spring 2018, Lieutenant Ahern routinely met with CPD Officers Brian Pugliares, Brian Mushlin, and Hector Vicente regarding CPD's adoption of a new firearm. During their meetings, the group discussed potential firearm replacements and CPD's adoption of the P320. Members of the group expressed concern about the Omaha Outdoors video described in Response No. 1, *supra*, yet relied heavily on SIG Sauer's assurances that the P320 was safe.

**Interrogatory No. 3**

Describe Your role, if any, in determining the equipment to be procured by the Cambridge (MA) Police Department, for use by its officers in the course of their duties.

**Response No. 3**

Lieutenant Ahern objects to Interrogatory No. 3 on the grounds that it is vague and ambiguous, seeks information that is neither relevant to the claims alleged against SIG Sauer nor likely to lead to the discovery of admissible evidence against SIG Sauer, and is not proportional to the needs of the case. Subject to and without waiving his objections and reservations, Lieutenant Ahern answers as follows:

Given Lieutenant Ahern's extensive experience with firearms, including twenty-six years of service in CPD's Special Response Team ("SRT"), five of which he served as Commander; his roles as an SRT sniper and as regional Vice President of the Training and Evaluation Committee of the United States Department of Homeland Security's Urban Areas Security Initiative ("UASI"); his position as a CPD firearms instructor; his certifications by the Commonwealth of Massachusetts Municipal Police Training Committee as a Firearms Academy Lead Instructor; and his qualifications as a certified firearms armorer for the P320, the Remington 870 shotgun, and the Remington 700, Lieutenant Ahern routinely provided input as to firearms acquired by the CPD. Lieutenant Ahern helped to identify shortcomings in equipment, answer questions from agency representatives, and make suggestions and recommendations to the CPD Commissioner, command staff, and other CPD employees. Lieutenant Ahern also was tasked with submitting abstracts to the training and evaluation committee of the UASI in determining what firearm equipment was suitable for the region. As just one example, in around 2011 and 2012, Lieutenant Ahern served as a point of contact for federal and state authorities for purposes of the 1033 program, whereby the CPD procured M-16 rifles from the federal government.

**Interrogatory No. 4**

Describe any and all communications that You had with any member of the Cambridge (MA) Police Department regarding the P320 model pistol prior to Your employer's decision to procure the P320 model pistols for use by its officers in the course of their duties, including: the name and title of the person with whom You communicated; the date of communications; and the response You received.

**Response No. 4**

Lieutenant Ahern objects to Interrogatory No. 4 on the grounds that it is vague and ambiguous, seeks information that is neither relevant to the claims alleged against SIG Sauer nor likely to lead to the discovery of admissible evidence against SIG Sauer, and is not proportional to the needs of the case. Subject to and without waiving his objections and reservations, Lieutenant Ahern answers as follows:

To the extent Interrogatory No. 4 seeks an account of email communications between Lieutenant Ahern from his CPD email account, such emails are in the custody and control of Cambridge and must be secured from them. Otherwise, records of Lieutenant Ahern's conversations by text message will be produced forthwith and are not recounted herein.

In around Fall 2017 and around Spring 2018, Lieutenant Ahern had frequent conversations with CPD employees regarding his concerns as to the P320. Conversations between Lieutenant Ahern and CPD employees that Lieutenant Ahern recalls are recounted, in sum and substance, below. Lieutenant Ahern recalls that these conversations took place at the station and at out-of-work social events.

As described in further detail in Response No. 2, *supra*, Lieutenant Ahern routinely met with Officers Pugliares, Mushlin, and Vicente regarding CPD's adoption of a new firearm.

Lieutenant Ahern recalls asking CPD Sergeant Frank Lange about Sergeant Lange's use of the P320. Sergeant Lange stated that he liked using the P320.

Lieutenant Ahern recalls frequent conversations with CPD Lieutenant George Sabbey in around Fall 2017 and around Spring 2018. Lieutenant Ahern recalls that Lieutenant Sabbey supported adopting the P320 and relied heavily on reassurances from SIG Sauer that it was a safe firearm. On or about September 1, 2017, Lieutenant Ahern told Lieutenant Sabbey and CPD Superintendent Chris Burke that CPD should not purchase the P320 because the P320 could fire without a trigger pull. Lieutenant Sabbey responded that Lieutenant Ahern did not have a say in the matter. On or about January 9, 2018, Lieutenant Ahern again expressed his concerns regarding the safety of the P320 to Lieutenant Sabbey. Lieutenant Sabbey informed Lieutenant Ahern that the P320 had been ordered and would become CPD's duty weapon.

Lieutenant Ahern recalls frequent conversations with former CPD Deputy Superintendent Paul Ames in around Fall 2017 and around Spring 2018. Lieutenant Ahern recalls that Superintendent Ames appeared to support adopting the P320 given SIG Sauer's reputation and Superintendent Ames' experience with other SIG Sauer firearms.

Lieutenant Ahern recalls frequent conversations with former CPD Lieutenant Stephen P. Ahern, Lieutenant Ahern's brother, in around Fall 2017 and around Spring 2018. In particular, in approximately 2017, Lieutenant Ahern attended a social event at the home of his sister, Susan Ahern. During the social event, Lieutenant Ahern discussed his concerns regarding the safety of the P320 with several people, including but not limited to Lieutenant Stephen Ahern.

Lieutenant Ahern recalls expressing concerns to CPD Legal Advisor James Mulcahy by email and over phone conversations. As a result of these conversations, Mulcahy reached out to SIG Sauer for assurances regarding the safety of the P320.

In approximately 2017, members of the SRT met for a cookout at the summer home of CPD patrolman Steve Kervick in Scituate. During the cookout, Lieutenant Ahern had conversations with several SRT members in which Lieutenant Ahern advocated against CPD arming its officers with the P320 and explaining that the P320 was prone to firing without a trigger pull.

In addition to these individuals, Lieutenant Ahern also shared his concerns with CPD Lieutenant Thomas Flynn.

**Interrogatory No. 5**

Describe any and all communications that You had with any member of the Cambridge (MA) Police Department in which You "warn[ed] members of the CPD" regarding the P320 model pistol prior to Your employer's decision to procure the P320 model pistols for use by its officers in the course of their duties, including: the name and title of the person with whom You communicated; the date of communications; and the response You received.

**Response No. 5**

Lieutenant Ahern objects to Interrogatory No. 5 on the grounds that it is vague and ambiguous, seeks information that is neither relevant to the claims alleged against SIG Sauer nor likely to lead to the discovery of admissible evidence against SIG Sauer, and is not proportional to the needs of the case.

Subject to and without waiving his objections and reservations, Lieutenant Ahern incorporates by reference his response to Interrogatory No. 4.

**Interrogatory No. 6**

Describe Your use of the Subject Pistol, including how often You fired it and how many rounds You have fired through it in total.

**Response No. 6**

Lieutenant Ahern objects to Interrogatory No. 6 on the grounds that it is vague and ambiguous. Subject to and without waiving his objections and reservations, Lieutenant Ahern answers as follows:

Lieutenant Ahern used the Subject Pistol from around Spring 2018, when it was issued to him by Cambridge, until May 19, 2019. During this period, Lieutenant Ahern trained members of the CPD as to use of firearms and used the Subject Pistol on a monthly to bimonthly basis during these trainings at the shooting range. In addition to these routine training days, Lieutenant Ahern also accompanied snipers to the shooting range on a monthly basis where he would fire rounds on the Subject Pistol. Lieutenant Ahern estimates that he fired approximately 1000 to 1500 rounds on the Subject Pistol.

Lieutenant Ahern carried the Subject Pistol on his person while on the line of duty but never fired the Subject Pistol while on duty.

He has not fired or carried the Subject Pistol since May 19, 2019.

**Interrogatory No. 7**

Describe with specificity how the Subject Incident occurred, including where the Subject Pistol was located, and how the Subject Pistol was being handled or secured at the time it allegedly discharged.

**Response No. 7**

On May 19, 2019, Lieutenant Ahern was assigned to the Mayfair Event in Harvard Square. When it started to rain around 11:00am, Lieutenant Ahern retreated to the SRT Truck with fellow CPD employees as well as members of the Cambridge Fire Department.

At the time, Lieutenant Ahern was wearing his Safariland Level 3 Retention Holster (the "Retention Holster"), along with an external ballistic vest and green detail vest. Typically, Lieutenant Ahern wears his detective holster, and because he rarely used the Retention Holster, he was performing routine function checks of the Retention Holster by manipulating the release mechanism. Lieutenant Ahern found that the holster was not seating correctly and removed the Subject Pistol from the holster as to quickly examine the Retention Holster. While standing, he passed the Subject Pistol in front of his body and held it in the traditional "SUL Position," facing down, which his right index finger along the frame of the weapon and attempted to reposition the Subject Pistol in the Retention Holster. At the time, Lieutenant Ahern had no contact with the trigger, and his index finger remained along the side of the weapon.

The Subject Pistol then fired without a trigger pull. The bullet impacted Lieutenant Ahern's left thigh over his duty pants, deflected off a magnet affixed to his Apple iPhone in his left pocket, entered an equipment bag on the floor of the van, and came to rest inside a ballistic helmet. Following the May 2019 Discharge Incident, Lieutenant Ahern observed that the spent casing of the round remained stuck in the Subject Pistol's ejection port.

**Interrogatory No. 8**

Identify all witnesses with knowledge of how the Subject Incident occurred, the immediate aftermath of the Subject Incident, the injuries You sustained in the Subject Incident, the treatment You received for such injuries and the damages allegedly arising out of the injuries You sustained in the Subject Incident.

**Response No. 8**

Lieutenant Ahern objects to Interrogatory No. 8 on the grounds that it is vague and ambiguous. Subject to and without waiving his objections and reservations, Lieutenant Ahern answers as follows:

| Individual | Expected Knowledge |
|---|---|
| CPD Superintendent Robert Lowe | Information regarding CPD's investigation of the May 2019 Discharge Incident. |

| | |
|---|---|
| CPD Sergeant Joseph Murphy | Information regarding CPD's investigation of the May 2019 Discharge Incident |
| Former CPD Lieutenant Silverio Ferreira | Information regarding CPD's investigation of the May 2019 Discharge Incident |
| Former CPD Superintendent Stephen DeMarco | Information regarding CPD's investigation of the May 2019 Discharge Incident |
| CPD Deputy Superintendent Leonard DiPietro | Information regarding CPD's investigation of the May 2019 Discharge Incident and CPD's discipline |
| Former CPD Deputy Superintendent Dennis O'Connor | Information regarding CPD's investigation of the May 2019 Discharge Incident |
| Former CPD Director of Personnel Andrea Brown | Information regarding CPD's investigation of the May 2019 Discharge Incident |
| Former CPD Commissioner Branville G. Bard, Jr. | Information regarding CPD's investigation of the May 2019 Discharge Incident |
| CPD Lieutenant Philip McDavitt | Information regarding CPD's investigation of the May 2019 Discharge Incident |
| Cambridge Police Superior Officers Association Secretary/Treasurer Casey McGrath | Information regarding CPD's investigation of the May 2019 Discharge Incident |
| Former CPD Officer Paul Bentubo | Witness of the May 2019 Discharge |
| CPD Sergeant Michael Taylor | Witness of the May 2019 Discharge |
| CPD Detective Lester Sullivan | Witness of the May 2019 Discharge |
| CPD Officer William LaMonica | Witness of the May 2019 Discharge |
| Cambridge Fire Department Lieutenant David Puopolo | Witness of the May 2019 Discharge |
| Cambridge Fire Department Gregory Gutoski | Witness of the May 2019 Discharge |
| Ashley E. Robshaw, PA-C, Cambridge Hospital | Information regarding injuries suffered by Lieutenant Ahern |

8

**Interrogatory No. 9**

Describe all service, repairs, or modifications performed on the Subject Pistol at any time, including: the name, address, and telephone number of the service provider; the type of service, repairs, or modifications performed; the date the service, repairs, or modifications were performed; and the cost of the service, repairs, or modifications.

**Response No. 9**

Lieutenant Ahern objects to Interrogatory No. 9 on the grounds that it is vague and ambiguous. Subject to and without waiving his objections and reservations, Lieutenant Ahern answers as follows:

Lieutenant Ahern is not aware of any services, repairs, or modification performed on the Subject Pistol prior to the May 2019 Discharge Incident. Since the May 2019 Discharge Incident, the Subject Pistol has been in the custody of the Boston Police Department Ballistics Lab, SIG Sauer, and CPD and outside of Lieutenant Ahern's possession. Therefore, Lieutenant Ahern cannot speak to any service, repairs, or modifications that may have occurred since the May 2019 Discharge Incident.

**Interrogatory No. 10**

Describe any issues or problems You experienced with the Subject Pistol prior to when the Subject Incident occurred.

**Response No. 10**

Lieutenant Ahern objects to Interrogatory No. 10 on the grounds that it is vague and ambiguous. Subject to and without waiving his objections and reservations, Lieutenant Ahern answers as follows:

On or about May 15, 2019, Lieutenant Ahern was conducting gunshot residue testing with Michaela McManus of CPD Crime Scene Services and Officer Vicente. As a part of the testing, Lieutenant Ahern was firing the Subject Pistol into a bullet trap. When Lieutenant Ahern intentionally fired the weapon during the test by pulling the trigger, the Subject Pistol failed to cycle. The spent casing did not eject, and a fresh bullet did not load into the battery. When he pulled the trigger a second time, he experienced a "dead trigger."

At least two times prior to the May 2019 Discharge Incident, Lieutenant Ahern experienced stovepipe jams while firing the Subject Pistol on the firing range.

**Interrogatory No. 11**

Identify with specificity all physical injuries You sustained as a result of the Subject Incident.

**Response No. 11**

Lieutenant Ahern objects to Interrogatory No. 11 on the grounds that it is vague and ambiguous. Subject to and without waiving its objections, Lieutenant Ahern answers as follows:

The day after the May 2019 Discharge Incident, on or about May 20, 2019, Lieutenant Ahern went to the emergency room at Cambridge Hospital due to pain and bruising of the left thigh, which the bullet impacted. There, he was diagnosed with a contusion, or deep bruise, of his leg. He experienced pain for a few days following the incident.

In addition, due to the Subject Pistol having fired at close range, Lieutenant Ahern – who already has experienced some hearing loss prior to the May 2019 Discharge Incident – experienced additional hearing loss for a day or so following the incident.

**Interrogatory No. 12**

Identify any mental or emotional injuries or damages You sustained which You attribute to the Subject Incident.

**Response No. 12**

Lieutenant Ahern objects to Interrogatory No. 12 on the grounds that it is vague and ambiguous. Subject to and without waiving his objections, Lieutenant Ahern answers as follows:

Lieutenant Ahern's mental and emotional injuries have been substantial. As a result of the May 2019 Discharge Incident, Lieutenant Ahern has experienced inability sleeping, anxiety, and depression, as well as feelings of isolation at work and betrayal.

Lieutenant Ahern has served a long and distinguished career at CPD. Prior to the May 2019 Discharge Incident, he felt as though he were on an upward trajectory based on his record and experience. As a result of May 2019 Discharge Incident, Lieutenant Ahern has experienced intense reputational damage and feelings of embarrassment, self-questioning, and ostracization. In addition, as a member of the CPD, Lieutenant Ahern depends on the reliability of his firearm for safety. As a result of the May 2019 Discharge Incident, Lieutenant Ahern now carries his firearm unloaded and has lost faith in his firearm for fear of experiencing a similar such incident.

**Interrogatory No. 13**

Describe any and all communications that You had with SIG Sauer regarding the Subject Pistol, or the P320 model pistol generally, after the Subject Incident occurred, including: the name and title of the person with whom You communicated; the date of communications; and the response You received.

**Response No. 13**

Lieutenant Ahern objects to Interrogatory No. 13 on the grounds that it is vague and ambiguous. Subject to and without waiving his objections, Lieutenant Ahern answers as follows:

Lieutenant Ahern did not have any personal communications with SIG Sauer following the May 2019 Discharge Incident. To the extent Interrogatory No. 13 seeks an account of communications between SIG Sauer and Cambridge or the CPD, such documents will be produced forthwith to the extent that they previously have been provided by Cambridge to Lieutenant Ahern. Otherwise, such emails are in the custody and control of Cambridge and must be secured from them.

**Interrogatory No. 14**

Describe any and all communications that You had with any member of the Cambridge (MA) Police Department regarding the Subject Pistol, or the P320 model pistol generally, after the Subject Incident occurred, including: the name and title of the person with whom You communicated; the date of communications; and the response You received.

**Response No. 14**

Lieutenant Ahern objects to Interrogatory No. 14 on the grounds that it is vague and ambiguous, seeks information that is neither relevant to the claims alleged against SIG Sauer nor likely to lead to the discovery of admissible evidence against SIG Sauer, and is not proportional to the needs of the case. Subject to and without waiving its objections, Lieutenant Ahern answers as follows:

To the extent Interrogatory No.1 4 seeks an account of email communications between Lieutenant Ahern from his CPD email account, such emails are in the custody and control of Cambridge and must be secured from them. Otherwise, records of Lieutenant Ahern's conversations by text message and personal email will be produced forthwith and are not recounted here.

Conversations between Lieutenant Ahern and CPD employees that Lieutenant Ahern recalls are recounted, in sum and substance, below.

During the May 2019 Discharge Incident, Lieutenant Ahern was in the company of Office Bentubo, Sergeant Taylor, Detective Sullivan, and Officer LaMonica, as well as two members of the Cambridge Fire Department. Those at the scene expressed shock at what had occurred. Lieutenant Ahern asked Sergeant Taylor whether he was alright, and Sergeant Taylor confirmed that he was. Officer Bentubo asked whether that was a shot, and Lieutenant Ahern confirmed. Office Bentubo then expressed that Lieutenant Ahern's leg appeared to be shot, and Lieutenant Ahern observed a tear in the left thigh of his pants.

Lieutenant Ahern and Office Bentubo exited the SRT van and conducted a check of the Subject Pistol, at which time they confirmed that the cartridge had not ejected. When Officer Bentubo

11

pulled the slide back the spent round was in the chamber, indicating that the Subject Pistol had failed to eject. Officer Bentubo accompanied Lieutenant Ahern to the station and presented him with a new weapon. Lieutenant Ahern left his gun belt, including the Subject Pistol, at the property office.

Deputy Lowe arrived at the scene immediately following the May 2019 Discharge Incident. Lieutenant Ahern informed Deputy Lowe that the weapon had unintentionally discharged. Deputy Lowe suggested that Lieutenant Ahern go home and take the rest of the day off.

CPD conducted an investigation of the May 2019 Discharge Incident. As part of that investigation, Lieutenant Ahern was the subject of questioning by Lieutenant Ferreira on or about May 30, 2019. Also present at the interview were Sergeant McDavitt and Casey McGrath. A report of the interview will be produced forthwith.

In approximately early June 2019, Lieutenant Ahern attended a wedding. There, now retired CPD Deputy Stephen A. Ahern, Lieutenant Ahern's cousin, told Lieutenant Ahern that Lieutenant Ahern "would be okay" if he said he had pulled the trigger or that the trigger caught on his clothing. Deputy Stephen A. Ahern also said Lieutenant Ahern would be okay if he acted like a man and did the right thing.

The CPD investigation found Lieutenant Ahern in violation for the shooting as a use of "excessive force." In approximately July 2019, Deputy Superintendent O'Connor told Lieutenant Ahern to accept discipline and that, if he did so, he would remain "viable" for a promotion to Deputy Superintendent. Deputy Superintendent O'Connor also told Lieutenant Ahern that it was a "waste of time" for Lieutenant Ahern to apply for the upcoming Deputy Superintendent vacancy with an investigation pending.

On or about August 19, 2019, Deputy Superintendent O'Connor met Lieutenant Ahern at Massport Fire Headquarters in Boston where Lieutenant Ahern was attending a training. Deputy Superintendent O'Connor gave Lieutenant Ahern a discipline resolution agreement (the "Letter Agreement") for the May 2019 Discharge Incident requiring that Lieutenant Ahern state that he discharged the firearm. Deputy Superintendent O'Connor informed Lieutenant Ahern that he would need to quit the SRT. Lieutenant Ahern declined to accept the Letter Agreement because he did not discharge the Subject Pistol.

On or about October 18, 2019, Deputy Superintendent O'Connor again told Lieutenant Ahern to accept discipline for the May 2019 Discharge Incident pursuant to the terms of the Letter Agreement, including the requirement that Lieutenant Ahern falsely state that he discharged the Subject Pistol. Lieutenant Ahern again refused. Deputy Superintendent O'Connor warned Lieutenant Ahern that he would face suspension and other consequences.

Shortly after the May 2019 Discharge Incident, Lieutenant Ahern also spoke to Detective Sarah Drewicz and now retired Officer Kevin Donofrio regarding the May 2019 Discharge Incident and CPD's investigation thereof.

**Interrogatory No. 15**

Please identify all persons or entities that inspected, examined, tested, disassembled or had possession of the Subject Pistol from the date of the Subject Incident until present.

**Response No. 15**

Lieutenant Ahern objects to Interrogatory No. 15 on the grounds that it is vague and ambiguous. Subject to and without waiving its objections, Lieutenant Ahern answers as follows:

Entities and individuals who have inspected, examined, tested, disassembled or had possession of the Subject Pistol from May 19, 2019 to present include Lieutenant Ahern and Officer Bentubo, as described in further detail in Response No. 14, *supra*, SIG Sauer, the Boston Police Department Ballistics Laboratory, and CPD.

**Interrogatory No. 16**

Identify all persons You have spoken or communicated with who claim that they experienced a discharge of a P320 model pistol where they claim that the pistol discharged without the trigger being pulled.

**Response No. 16**

Lieutenant Ahern objects to Interrogatory No. 16 on the grounds that it is vague and ambiguous, seeks information that is neither relevant to the claims alleged against SIG Sauer nor likely to lead to the discovery of admissible evidence against SIG Sauer, and is not proportional to the needs of the case. Subject to and without waiving his objections, Lieutenant Ahern answers as follows:

Lieutenant Ahern has spoken or communicated with Loudoun Country Virginia Deputy Sheriff Marcie Vadnais, Somerville Police Department Officer Walter Collette, Jr., CPD Officer Jacques Desrosiers, and CPD Detective David Albert.

**Interrogatory No. 17**

Identify all medical providers or other professionals who have provided treatment for any physical, mental or emotional injuries You claim You sustained as a result of the Subject Incident.

**Response No. 17**

Lieutenant Ahern objects to Interrogatory No. 17 on the grounds that it is vague and ambiguous. Subject to and without waiving its objections, Lieutenant Ahern answers as follows:

Ashley E. Robshaw, PA-C, Cambridge Hospital, provided treatment to Lieutenant Ahern for physical injuries sustained as result of the May 2019 Discharge Incident.

**Interrogatory No. 18**

Describe and itemize the damages You are claiming as a result of the Subject Incident, including all medical expenses, lost wages, loss of future earnings or earning capacity and any other quantifiable damages You are seeking in this action.

**Response No. 18**

Lieutenant Ahern objects to Interrogatory No. 18 on the grounds that it seeks expert information that will be disclosed in accordance with the Court's Scheduling Order and Federal Rules of Civil Procedure 26(a)(2) and 26(b)(2).

Subject to and without waiving his objections, Lieutenant Ahern has incurred medical expenses, lost past earning capacity, lost future earning capacity in amounts to be calculated by an expert, and non-economic damages in an amount in the province of the Court and jury.

## **VERIFICATION**

I, Thomas R. Ahern, am the plaintiff in the above-captioned case. I have read and know the contents of these responses. I believe the responses are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

*/s/ Thomas R. Ahern*
Thomas R. Ahern


As to objections:


/s/ *Jeffrey S. Bagnell*
Jeffrey S. Bagnell
Federal Bar No. CT18983
55 Post Road West
Westport, CT 06880
(203) 984-8820
jeff@bagnell-law.com

/s/ *Peter K. Levitt*
Peter K. Levitt (BBO #565761)
Michelle R. Pascucci (BBO #690889)
Donnelly Conroy & Gelhaar, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
(617) 720-2880
pkl@dcglaw.com
mrp@dcglaw.com
Counsel for Plaintiff Thomas R. Ahern

Dated: April 25, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that this document was served on counsel for SIG Sauer, Inc. electronically.

Dated: April 25, 2022

*/s/ Peter K. Levitt*
Peter K. Levitt