UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS R. AHERN,<br><br>　　Plaintiff,<br><br>　　v.<br><br>SIG SAUER, INC. and CITY OF CAMBRIDGE,<br><br>　　Defendants. | No. 21-cv-11007-DJC<br><br>**REQUEST FOR HEARING** |

### PLAINTIFF THOMAS AHERN'S MOTION FOR SANCTIONS

In May-June 2025, more than a year after fact discovery closed and within months of trial, SIG Sauer, Inc. ("Sig") produced to Thomas Ahern ("Mr. Ahern" or "plaintiff") the Failure Modes Effects and Criticality Analysis (the "FMECA") (attached hereto at Ex. A) and more than a Terabyte of additional discovery relating to testing of the P320 (the "Testing Information"). The plaintiff has repeatedly requested this P320 testing and analysis evidence. In 2022, Mr. Ahern filed two motions to compel safety analyses and testing related to the P320. In January 2023 and May 2023, the Court Ordered Sig to identify and produce various categories of documents relevant to these requests. Sig produced the FMECA on May 2, 2025, only after Mr. Ahern's counsel came upon a reference to the FMECA in a separate case and demanded its production.

███████████████████████████████████████████████████████

███████████████████████████████ On May 15, 2025, the plaintiff demanded production of these materials. On June 13, 2025, Sig produced the Testing Information. These materials, produced more than a year after the close of discovery, and mere months before trial, are approximately *five times* the amount of discovery that Sig had previously produced in the case.

1

Sig's failure to produce the FMECA and the Terabyte of Testing Information during fact discovery is a stunning and wholesale breach of its discovery obligations. Sig should have produced these documents when first requested in 2022, or, at the very latest, when the Court ordered Sig to do so in 2023. As discussed *infra*, the FMECA and Testing Information are relevant to multiple Requests for Production ("RFPs"), Court Orders compelling production of documents responsive to these RFPs, and critical issues in the case. ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

███ Sig's withholding of these materials violates the Orders of this Court, disrespects the rules of discovery established by the Court, and has significantly prejudiced Mr. Ahern.

Following Sig's production of the FMECA, Mr. Ahern requested that Sig make its engineer, Sean Toner, available in his personal capacity for a deposition prior to trial. Mr. Toner was the hands-on engineer with primary responsibility for developing the P320. He is the current "team lead" for the P320, was previously deposed in both his personal capacity and as a Rule 30(b)(6) corporate designee as to the design and development of the P320 and testing performed on the P320, and will be a trial witness. Mr. Toner's expertise and experience with the P320 is presumably why Sig offered him as a corporate designee. Had Sig produced the FMECA and Testing Information in 2022, when it should have, Mr. Ahern's counsel would have asked many witnesses—including Mr. Toner—about the FMECA and Testing Information during depositions.

Sig declined Mr. Ahern's request to depose Mr. Toner and instead offered to make Sig employee Matt Taylor available solely as a Rule 30(b)(6) witness. Mr. Ahern did not request a Rule 30(b)(6) deposition related to the FMECA and Testing Information and has not previously

2

sought to depose Mr. Taylor. Nor has Sig ever previously offered Mr. Taylor as a 30(b)(6) witness. Having stonewalled critical discovery for years, Sig cannot now refuse to make its hands-on P320 engineer available for a deposition and instead insist on conducting a Rule 30(b)(6) deposition with its hand-picked witness.

For the reasons presented herein, and pursuant to Federal Rule of Civil Procedure 37(b)(1), Mr. Ahern respectfully requests that the Court Order that Sig make both Mr. Taylor and Mr. Toner available for depositions to answer all questions related to the FMECA and the Testing Information. Mr. Ahern also requests that the Court impose punitive monetary sanctions as set forth herein. Finally, because any additional depositions of Sig witnesses will necessarily conflict with the current pre-trial Scheduling Order, Mr. Ahern respectfully requests that all deadlines be stayed pending this Court's decision of this motion.[1]

## BACKGROUND

Mr. Ahern filed this lawsuit on June 16, 2021. On March 9, 2022, Mr. Ahern sent RFPs (attached hereto as Ex. B) to Sig. Among other things, Mr. Ahern sought "[a]ll documents concerning inspections and safety analyses performed on the P320 specifically or the product line from 2012 to present," and "[a]ll documents pertaining to root cause analyses related to actual or alleged accidental Uncommanded Discharges of the P320 from 2012 to present." Ex. B, RFP Nos. 6 & 9. The requested materials address multiple issues relevant to Mr. Ahern's claims, including Sig's knowledge of the P320's ability to fire without a trigger pull, the fact that the P320 can fire without a trigger pull, and the mechanisms of the P320 that allow it to fire without a trigger pull.

---

[1] Counsel for Sig has advised that it is scheduled to begin trial on July 14, 2025 in *Desrosiers v. Sig Sauer, Inc.*, Dkt. No. 22-cv-11674-PBS, and has advised that the earliest Mr. Taylor would be available for a deposition would be approximately mid-August. This timeline would presumably apply to Mr. Toner as well. Some of the current deadlines, including the parties' deadline to file deposition designations, Fed. R. Civ. P. 26(a)(3) pretrial disclosures, and opening briefs and motions *in limine* (*see* ECF 185-1 & 186), will conflict with the timing of these depositions. Thus, Mr. Ahern seeks a stay of all upcoming deadlines of the current Scheduling Order, and requests that that the Court hold a hearing for the parties to propose a revised Scheduling Order and discuss the current trial date.

Sig produced minimal information responsive to the above-quoted requests. On October 27, 2022, Mr. Ahern filed his first motion to compel, seeking documents related to uncommanded discharges, tests performed on the P320, and documents related to the initiation of the Voluntary Upgrade Program. ECF 64. Mr. Ahern also sought information related to drop fires, including testing materials explicitly referenced in an email from Sig's regional sales manager, Don Boulerice, that Cambridge relied on in finalizing the purchase of the P320 for the Cambridge Police Department. Joint Status Report, ECF 78, at 3-4. The December 2017 email referenced "additional testing above and beyond the standard American National Standards Institute (ANSI/Sporting Arms & Ammunition Institute (SSAMI), National Institute of Justice (NIJ), Department of Justice (DOJ), Massachusetts, California, and other global military and law enforcement protocols." *Id.* (citing email).

On November 29, 2022, following a hearing on the motion to compel, the parties provided the following update on the status of the discovery requests: "Sig informed Ahern that it had not found any further responsive documents and therefore would not be making additional productions." *Id.* at 1.

On January 10, 2023, the Court Ordered Sig to produce withheld materials, including: (1) "any documents regarding the testing described in the December 8, 2017 email from Boulerice to Officer Sabbey and relating in any way to unintended charges," ECF 89 ¶ 4; (2) "any documents relating to the initiation of the Voluntary Upgrade Program, including any documents describing the circumstances that led to the implementation of the Program, the goals of the Program, and any specific problems that were intended to be addresses by the Program," *id.* ¶ 5; and (3) "documents concerning drop-fires." *Id.* ¶ 9. The Court ordered Sig to produce any such documents by January 23, 2023. *Id.* ¶ 10.

On February 15, 2023, Mr. Ahern received a supplementary production of documents from Sig that was insufficient to address concerns that Sig continued to withhold responsive materials. On March 23, 2023, Mr. Ahern filed a second motion to compel on the basis that Sig had failed to identify and produce the testing documents identified in the December 8, 2017, email and documents related to the initiation of the Voluntary Upgrade Program. ECF 99 at 5-6. In its Opposition to Mr. Ahern's Second Motion to Compel, filed on April 10, 2023, Sig represented to the Court that its "production ***includes all of the drop testing Sig Sauer was able to locate in its files and Sig Sauer produced it in full to Plaintiff***." ECF 101 at 6 (emphasis added); *see id.* ("***Sig Sauer has produced all testing documents related to drop tests performed on the P320 model pistol—above and beyond what was referenced by the Don Boulerice email*** . . .") (emphasis added).

On May 31, 2023, the Court Ordered Sig to take steps to ensure it had produced all testing documents, stating that Sig must "further investigate the testing that was referenced in the December 8, 2017 email from Boulerice to Officer Sabbey and identify which documents it produced that relate to such testing." ECF 109 ¶ 4. Despite Sig's representation that it had identified no additional responsive documents, Sig then made additional productions of documents concerning testing and uncommanded discharges, including written records of testing performed by Dayton T. Brown, Inc., an engineering consulting firm, and numerous videos of uncommanded discharges. These documents continued to raise concerns that Sig had not complied with its discovery obligations, as the Dayton Brown materials were dated October 2021, four years *after* the December 2017 email. Given that Mr. Ahern had requested the documents referenced in the email *twice* and Sig had represented to the Court that it had identified no additional responsive material, Mr. Ahern had little recourse at that time.

Fact discovery closed in November 2023.² ECF 114. In April 2025, approximately a year and a half after the close of fact discovery, Mr. Ahern's counsel came upon a reference to the FMECA in their review of filings in *Desrosiers v. Sig Sauer, Inc.*, 1:22-cv-11674-PBS (ECF 83-38, March 28, 2025). On April 22, 2025, realizing that Sig had never produced the FMECA, Mr. Ahern's counsel demanded that Sig produce the document. *See* Ex. C (April 22, 2025 Correspondence from Mr. Ahern to Sig).

On May 2, 2025, Sig produced the FMECA. *See* Ex. D (May 2, 2025 Correspondence from Sig to Mr. Ahern). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Had Mr. Ahern received the FMECA and Testing Information in a timely manner, his counsel certainly would have requested these materials in the normal course of discovery, would have asked witnesses questions about the FMECA and Testing Information during depositions, and would not have limited questioning to a Rule 30(b)(6) corporate designee selected by Sig. The late production of the FMECA and Testing Information has deprived Mr. Ahern of that opportunity.

On May 15, 2025, Mr. Ahern requested that Sig produce ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. E (May 15, 2025, Correspondence from Mr. Ahern to Sig). On June 9, 2025, Sig stated that it would provide "a hard drive of all of the P320 tests in its possession." Ex. E (June 9, 2025, Correspondence from Sig to Mr. Ahern). Mr. Ahern's counsel received the hard drive on June 13, 2025.³ The hard drive includes a total of 11,493 folders and 98,999 files, equaling approximately 1 Terabyte (or 1,000 gigabytes) of total data. To put this number in

---

² The Court allowed a limited extension of the discovery deadlines to permit the deposition of a witness in January 2024. The Court did not otherwise extend the deadline for fact discovery. *See* ECF 123-24.
³ The production will require time to thoroughly review and understand. Mr. Ahern reserves the right to seek additional discovery based on what his review of this material reveals.

6

perspective, prior to the close of fact discovery in November 2023, Sig made its last production of documents on August 9, 2023. At that time, Sig had produced a total of approximately 215 gigabytes of data in the case. Sig's recent production, a year and a half after the close of fact discovery, is therefore approximately ***five times larger*** than the combined size of all other discovery productions made by Sig in this case.

Based on counsel's limited review of the Terabyte of Testing Information produced on June 13, 2025, Sig has just produced ***ten years*** of testing material related to the P320, spanning from 2013 to 2023. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████.[4] Mr. Ahern's experts did not have the opportunity to review any of these materials prior to preparing their expert reports or being deposed.

With only months before trial, there is no way for Mr. Ahern to completely remedy the prejudice he will suffer as a result of Sig's belated disclosures. In an effort to minimize this prejudice, however, Mr. Ahern requests that the Court Order the following:

1. Sig makes Matt Taylor and Sean Toner available for depositions to answer all questions about the FMECA and the Testing Information;

---

[4] All of this material is responsive to Mr. Ahern's RFPs, which sought among other things "[a]ll documents concerning inspections and safety analyses performed on the P320 specifically or the product line from 2012 to present," and "[a]ll documents pertaining to root cause analyses related to actual or alleged accidental Uncommanded Discharges of the P320 from 2012 to present." Ex. B, RFP Nos. 6 & 9.

7

2. In the alternative, if the Court does not order Sig to make Mr. Toner available for a deposition, the Court will provide a jury instruction at trial as to an adverse inference against Sig based on its failure to disclose relevant discovery pursuant to Court Orders compelling such disclosure;

3. Mr. Ahern's experts are not precluded from testifying about the FMECA and the Testing Information at trial because Sig's failure to timely produce these items deprived Mr. Ahern's experts of the opportunity to review them prior to preparing their respective expert reports and conducting their respective depositions;

4. Sig pay a punitive monetary sanction as a result of Sig's failure to produce the FMECA and Testing Information during discovery, including attorney's fees and costs incurred as a result of seeking the FMECA and Testing Information from Sig; the preparation of this motion and any other briefings and hearings associated therewith; and the supplementary depositions taken as a result of this motion; and

5. The Court stay all upcoming deadlines of the current Scheduling Order and hold a hearing for the parties to propose a revised Scheduling Order and evaluate the impact of this late discovery on the trial date.

## **ARGUMENT**

Sig should have produced the FMECA and Testing Information in 2022 when Mr. Ahern first served his RFPs seeking safety analyses and testing information. Sig did not do so and Mr. Ahern repeatedly sought court relief. In 2023, after two Court Orders requiring that Sig produce documents relevant to drop fires, safety analyses, and testing documents, Sig still did not produce the FMECA and Testing Information. If plaintiff's counsel had not come upon the FMECA in a completely separate case, Sig presumably never would have produced these materials to Mr. Ahern.

Sig's violation of the Court's procedures and Orders governing discovery warrants significant sanction for reasons of both general and specific deterrence. To try to minimize the prejudice to Mr. Ahern, the Court should Order that Sig make both its principle hands-on P320 engineer, Sean Toner, and Rule 30(b)(6) corporate designee, Matt Taylor, available for depositions to answer all questions regarding the FMECA and Testing Information. This limited discovery is

essential to, in at least some measure, try to minimize the significant prejudice caused by Sig's wrongful withholding of important, material discovery. At this late stage, however, no additional depositions can fully and adequately remedy the prejudice arising from Sig's discovery violations. These documents are essential to central issues that have come before the Court and will come before the jury, and Sig avoided critical discovery by withholding these documents from production. If such misconduct does not warrant monetary sanctions, it is difficult to discern what would.

### 1. The FMECA and Testing Information Were Directly Responsive to Mr. Ahern's Discovery Requests and this Court's Orders Compelling Discovery

The FMECA and Testing Information are responsive to Mr. Ahern's original discovery requests and are exactly what the Court *Ordered* Sig to produce in January 2023 and again in May 2023.

First, the Court ordered Sig to produce "documents concern[ing] drop-fires." *See* ECF No. 89 ¶ 9. The FMECA and the Testing Information are directly responsive to this Order. ███ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ *See* Ex. A (emphasis added). Similarly, the Testing Information is replete with testing information regarding drop fires across multiple years. *See supra* pg. 7.

Second, the Court ordered Sig to produce "documents regarding the testing described in the December 8, 2017 email" in January 2023 and reiterated that Order in May 2023. ECF 89 ¶ 4; ECF 109 ¶ 4. ████████████████████████████████████████████ ███████████████████████████████████████████████████████████ precedes the Cambridge email by ten months and therefore appears to be one of the documents (or a document describing the testing) referenced in the email. *Id.* Similarly, the Testing Information contains

9

numerous tests from 2016 and 2017 that were never produced to Mr. Ahern. The December 8, 2017, refers to "additional testing" that went "above and beyond . . . global military and law enforcement protocols." It defies logic that these copious testing materials dating from the same time period as the email correspondence are not the exact material referenced in this email correspondence.[5]

Third, the Court ordered Sig to produce "documents relating to the initiation of the Voluntary Upgrade Program," which took place in August 2017. ECF 89 ¶ 5. ■

■

Similarly, the Testing Information contains testing material from the same date range that the Voluntary Upgrade

---

[5] Sig's June 9, 2025, letter states that it produced any such documents "two years ago." Ex. D at 2. Sig does not and cannot explain how it is that Sig produced all such testing two years ago, but nevertheless needed to produce a Terabyte hard drive of unproduced testing materials.

■ This is inconsistent with the testimony of Al Larochelle, a Sig quality gunsmith technician, who described the secondary-sear notch as a "redundant safety." See Ex. F at 74-75 (excerpts of testimony of Al Larochelle). In any event, the parties dispute over what this term refers to merely underscores the need for the additional deposition of Sig's hands-on P320 engineer, Mr. Toner, to answer questions about this and many other topics related to these belatedly produced documents.

Program was developed, suggesting many of the materials contained therein are responsive to this request as well.

Neither Mr. Ahern's requests nor the Court's Order compelling discovery limited responsive documents to "tests." ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ and is plainly and obviously responsive to both Mr. Ahern's discovery requests and this Court's Orders.

### 2. The Court Should Order Limited Discovery to Address the Prejudice to Mr. Ahern

"Any failure to make a serious, good faith effort to make complete production of required documents in response to a court order is unjustified." *Red Wolf Energy Trading, LLC v. Bia Capital Mgmt, LLC*, 626 F. Supp. 3d 478, 499 (D. Mass. 2022). Throughout this case, Sig has argued that "there is no evidence to show that the P320 can, in fact, fire without a trigger pull." Sig's Reply in Support of its Mot. for Summary Judgment, ECF No. 160 at 2. ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. A. Sig's representations to Mr. Ahern and the Court that it had sought out responsive documents but found none, reiterated in the joint status report submitted to the Court and its Opposition to Mr. Ahern's Second Motion to Compel (*see* ECF 78 at 1, ECF 101 at 5-6), is flatly contradicted by its later production of the FMECA and Testing Information.

Fed. R. Civ. P. 37(b)(2)(A) expressly empowers the Court to "issue further just orders" where a party has "fail[ed] to obey an order," as Sig did here. "District courts have broad authority to issue sanctions in response to a party's failure to obey discovery orders." *Red Wolf Energy Trading, LLC*, 626 F. Supp. at 500 (entering default judgment where defendant continually failed to produce documents and plaintiff was forced to file multiple motions to compel). They "may

impose such sanctions with an eye both to penalize the particular noncompliance and to deter others from engaging in the same tactics." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015). In assessing adequate sanctions, the Court should "consider the totality of the circumstances," including "'the severity of the discovery violations, legitimacy of the party's excuses for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." *Red Wolf Energy Trading*, 626 F. Supp. at 500 (quoting *AngioDynamics, Inc.*, 780 F.3d at 435).

      a. *The Court Should Compel Sig to Make Mr. Toner Available for a Supplementary Deposition*

If the plaintiff received the FMECA and Testing Information during discovery, his counsel would have asked Sig's employees, corporate representatives, and expert about the materials during depositions, and their testimony would have been admissible at trial, regardless of whether the witness was available. *See* Fed. R. Evid. 801(d)(2) (statements of a party opponent are not hearsay); Fed. R. Civ. P. 32(a) (setting forth uses of a deposition of a party opponent during trial). Moreover, Mr. Ahern's experts would have reviewed the FMECA and Testing Information in preparing their expert reports and being deposed, and those materials may have impacted their expert opinions.

Sig has offered its own hand-picked Rule 30(b)(6) corporate designee, Matthew Taylor, to be deposed on the FMECA and Testing Information. This is badly insufficient to address the prejudice to Mr. Ahern. Had the FMECA and Testing Information been timely produced, Mr. Ahern could have asked *any* witness about the FMECA and Testing Materials, including Mr. Toner, Sig's engineer and current P320 "team lead" whom Sig had identified as a corporate designee on testing of the P320, among other things. Mr. Ahern intends to call Mr. Toner, who

12

was "the lead designer" of the P320, as a witness at trial. Ex. G (Depo. of Sean Toner) at 35:8-9. While Mr. Taylor may have supervised Mr. Toner (*see id.* at 10:9-17), Mr. Toner had a more significant day-to-day role in the development of the P320, with responsibility over design of P320's components. *Id.* at 9:11 – 12:19. For this reason, his experience will be vital to questions about the copious materials provided in the Testing Information. Mr. Taylor, as a supervisor, may only have limited knowledge concerning the methods, experience, and observations from the decade of tests included in the Testing Information. It is far more likely that Mr. Toner, who was deeply involved with the P320's design and testing, can speak to these essential details.

As to the FMECA, Mr. Toner was one of the few Sig employees who actually reviewed this document. *See* Ex. H (Depo. of Matt Taylor, *Catatao v. Sig Sauer, Inc.*, 1:22-CV-10620) at 10:19-24. Similarly, Mr. Toner's background gives him special insight on the motivation behind the FMECA. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Had Mr. Ahern's counsel been armed with the FMECA and Testing Information at Mr. Toner's deposition, he could have asked about these materials in depth.

Additionally, ████████████████████████████████████████████████████████████████████████████████████████

13

 This email underscores Mr. Toner's involvement in testing and the FMECA.

The FMECA and the Testing Information raise additional lines of questioning that Mr. Ahern's counsel would have asked Mr. Toner regarding this exchange, had the FMECA and the Testing Information been produced in a timely manner.  Mr. Ahern was deprived of that basic discovery right.  Now, unless the Court allows a supplementary deposition of Mr. Toner, Mr. Ahern will not have the opportunity to ask Mr. Toner, a trial witness and the designer of components of the P320, about these critical issues.

Sig seeks to limit any additional deposition to its hand-picked Rule 30(b)(6) corporate designee.  Mr. Ahern had deposed Mr. Toner, however, in his personal capacity as well as in his capacity as a designated 30(b)(6) witness and now seeks Mr. Toner's testimony exclusively in his personal capacity.[7]  Forcing Mr. Ahern to depose only Sig's chosen witness on the FMECA and Testing Information will only further compound the prejudice that he has suffered.

If the Court declines to order Sig to make Mr. Toner available for a supplementary deposition, the Court should, in the alternative, provide an adverse inference jury instruction at trial in recognition of the fact that Sig's belated production of critical documents deprived Mr. Ahern the opportunity to depose witnesses about these materials and take other critical discovery.

---

[7] While Sig designated Mr. Toner a Rule 30(b)(6) witness on certain topics, Mr. Ahern noticed the deposition of Mr. Toner in his personal capacity and Mr. Toner testified in both capacities during his deposition.  *See* Ex. K (Notice of Deposition of Sean Toner).

*See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 20 (1st Cir. 2009) ("[A]n adverse inference instruction may be allowed when a party fails to produce a document that exists or should exist and is within its control.").

        b. *Monetary Sanctions Against Sig Are Warranted*

The remedies sought by Mr. Ahern are appropriate based on the harm caused by Sig's violations. Permitting additional questioning, under oath, of Mr. Toner and Mr. Taylor, is necessary but not sufficient as a remedy. *See Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009) (in assessing the adequacy of sanctions, the court considers "the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure"). No discovery, at this late juncture, will remedy the prejudice caused by Sig's withholding of the clearly responsive and important documents at issue here. With less than six months before trial, Mr. Ahern cannot have access to the full scope of tools—*e.g.*, interrogatories, requests for admission, requests for production, and depositions of witnesses and experts—that would have been available to him had Sig produced the FMECA and Testing Information when it should have in 2022.

More is required given the inadequacy of further discovery at this late stage of the case. Monetary sanctions are necessary to send a strong message to litigants, who—like Sig—would disregard the rules of discovery in the hope that relevant documents hurtful to their case will not be found. Civil discovery is premised on the notion that parties will, in good faith, search for and disclose relevant requested documents in their possession, custody, or control, regardless of whether those documents help or hurt their case. Sig's belated production of the FMECA and Testing Information, three years after they were first requested and two years after they were Ordered produced by the Court, and only after plaintiff's counsel became aware of the FMECA's

15

existence and specifically demanded it, demonstrates that Sig has not complied with these basic principles of civil litigation. See *In re 1747 West Main Corp.*, 198 B.R. 639, 641, 644 (D.R.I. 1996) (court imposed monetary sanctions and prohibited party from presenting a defense at trial where party stated it was unaware of responsive records, yet later produced responsive materials, prior to trial); *cf. Pereira v. Narrangansett Fishing Corp.*, 135 F.R.D. 24, 26 (D. Mass. 1991) (courts have the "power to require the offending party or that party's attorney to pay a monetary sanction to the Court in an amount unrelated to what might be awarded to the opposing party as costs and attorney's fees.").

## REQUEST FOR HEARING

Pursuant to L.R. 7.1(d), Mr. Ahern respectfully requests a hearing on the issues presented herein.

## CONCLUSION

For the above reasons, Mr. Ahern respectfully requests that this Court grant the following relief:

1. Sig makes Matt Taylor and Sean Toner available for depositions to answer all questions about the FMECA and the Testing Information;

2. In the alternative, if the Court does not order Sig to make Mr. Toner available for a deposition, the Court will provide a jury instruction at trial as to an adverse inference against Sig based on its failure to disclose relevant discovery pursuant to Court Orders compelling such disclosure;

3. Mr. Ahern's experts are not precluded from testifying about the FMECA and the Testing Information at trial because Sig's failure to timely produce these items deprived Mr. Ahern's experts of the opportunity to review them prior to preparing their respective expert reports and conducting their respective depositions;

4. Sig pay a punitive monetary sanction as a result of Sig's failure to produce the FMECA and Testing Information during discovery, including attorney's fees and costs incurred as a result of seeking the FMECA and Testing Information from Sig; the preparation of this motion and any other briefings and hearings associated therewith; and the supplementary depositions taken as a result of this motion; and

5. The Court stay all upcoming deadlines of the current Scheduling Order and hold a hearing for the parties to propose a revised Scheduling Order.

Date: June 25, 2025

        THOMAS R. AHERN,

        By his attorneys,

        */s/ Peter K. Levitt*
        Peter K. Levitt (BBO# 129930)
        Michelle R. Pascucci (BBO# 690889)
        Pietro A. Conte (BBO# 707055)
        DONNELLY, CONROY & GELHAAR, LLP
        260 Franklin Street, Suite 1600
        Boston, Massachusetts 02110
        (617) 720-2880
        pkl@dcglaw.com
        mrp@dcglaw.com
        pac@dcglaw.com

        */s/ Jeffrey S. Bagnell*
        Jeffrey S. Bagnell
        Federal Bar No. CT18983
        Jeffrey S. Bagnell, Esq., LLC
        55 Post Road West
        Westport, Connecticut 06880
        (203) 984-8820
        jeff@bagnell-law.com

## CERTIFICATE OF CONFERENCE

I hereby certify that, on June 11, 2025, pursuant to Local Rule 37.1(a), counsel for all parties met and conferred on the issues raised in the preceding Motion for Sanctions. Sig's counsel has objected to the relief sought herein. Counsel for the City of Cambridge took no position on the issues raised in the preceding Motion for Sanctions.

*/s/ Michelle R. Pascucci*
Michelle R. Pascucci

## CERTIFICATE OF SERVICE

I hereby certify that this filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: June 25, 2025

/s/ *Pietro A. Conte*
Pietro A. Conte