**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THOMAS R. AHERN,<br><br>    Plaintiff,<br><br>    v.<br><br>SIG SAUER, INC.,<br><br>    Defendant. | Case No. 21-cv-11007-DJC |

**PLAINTIFF THOMAS AHERN'S OPPOSITION TO SIG SAUER INC.'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING PLAINTIFF'S AMORPHOUS "OUT-OF-BATTERY" AND "FAILURE TO EJECT" THEORIES**

Defendant Sig Sauer, Inc. ("Sig") filed a Motion in limine to preclude Plaintiff Thomas Ahern ("Mr. Ahern") from introducing evidence concerning the alleged "amorphous 'out-of-battery' and 'failure to eject' theories" about why the P320 is defective. *See* ECF 245. Mr. Ahern submits this memorandum in opposition to Sig's Motion.

## ARGUMENT

***First***, to be clear, Mr. Ahern does not intend to argue at trial that a P320 being "out-of-battery" renders it defective. None of Mr. Ahern's three expert witnesses ever gave an opinion to that effect. And Mr. Ahern's P320 was not "out-of-battery" during—or immediately after—his uncommanded discharge incident. Sig's devotion of so much of their Motion to this issue is puzzling to say the least. Sig undoubtedly knows that the "out-of-battery" condition has no relation to Mr. Ahern's defect theory.[1] At best, Sig's Motion is yet another attempt to disparage Mr. Ahern's expert witnesses—long after this Court denied Sig's three *Daubert* motions.

---

[1] Sig addresses both the "out-of-battery" condition and the "failure to eject" condition simultaneously in its Motion. This is an intentional sleight of hand. Sig is well aware that the two issues are very different—the latter being far more relevant to Mr. Ahern's defect theory. But Sig addresses them simultaneously because Sig recognizes that while the "out-of-battery"

Insofar as the Motion seeks another bite at the *Daubert* apple, it must be s denied as untimely and waived. *See Feliciano-Hill v. Principi*, 439 F.3d 18, 24 (1st Cir. 2006) ("Parties have an obligation to object to an expert's testimony in a timely fashion…"). *See also Glenwood Farms, Inc. v. Ivey*, 2006 WL 521851, at *1 (D. Me. Mar. 2, 2006) (denying second round of *Daubert* motions as "second belated bite at the apple" because such motions were filed after the Court-ordered deadline and after the Court had already ruled on defendants' prior *Daubert* motions). For example (and without limitation), Sig now attacks Hicks' opinion that the failure of Ahern's P320 to eject the spent casing is "an indication of a malfunction." ECF 149, Exhibit K (Hicks Report at 3). Sig had ample opportunity to advance that argument on or before the March 8, 2024 Court-imposed *Daubert* deadline, but Sig did not do so. Under the above cited cases, Sig's failure to claim Hicks' opinion was inadequately disclosed or does not satisfy Rule 702' threshold—as it argues (albeit summarily and weakly) for the first time now—amounts to waiver.

**_Second_**, to the extent Sig's Motion claims that Mr. Ahern's "theory" is that the P320's failure to eject a spent shell casing renders the pistol defective, the Motion misapprehends Mr. Ahern's theory of the case. The P320's failure to eject the spent shell casing is not Mr. Ahern's defect theory, and none of Mr. Ahern's experts say as much. But simply because the P320's failure to eject is not Mr. Ahern's defect theory does not render such evidence irrelevant or unfairly prejudicial.

In Mr. Ahern's uncommanded discharge incident, the spent shell casing failed to eject. That is a fact. The same is true in many other uncommanded P320 discharge incidents across the

---

evidence may be excludable on relevance grounds, Sig has little basis to make such argument about the "failure to eject" evidence.

nation, several of which are addressed in detail in Mr. Ahern's Motion in Limine No. 4: to Admit Evidence of Other Similar P320 Discharge Incidents.  *See* ECF 241 at 4-14.

One of Mr. Ahern's experts—Timothy Hicks—expressly opines that this failure of the P320 to eject the spent casing is "***an indication of a malfunction***."  ***"The spent casing from the un-commanded discharge event did not eject, further evidence of a firearm malfunction."***  *See* ECF 149, Exhibit K (Hicks Report at 3, 22) (emphasis added).  Mr. Ahern should be able to present Hicks' opinion to the jury because it is probative of the fact that Mr. Ahern's P320 malfunctioned due to design and manufacturing defects.

Sig's brand-new argument that Hicks' Report inadequately states the basis and reasons for his opinions comes too late.  *See supra* at 2.  Even assuming arguendo the Court were to consider the substance of Sig's new argument (the Court should not), Sig's position is without merit.  In his Report (at 3), Hicks explains: "The spent casing did not eject and was found still in the chamber, an indication of a malfunction.  For reference, two other CPD officers also reported instances where the empty casing failed to eject after experiencing un-commanded discharges with their P320 firearms.  It should be noted that the Sig Sauer Tactical Armorer's Manual for the P320 identifies that for the full-sized version that the recoil spring should be replaced after 10,000 rounds are sent through the weapon.  It is unlikely that Lt. Ahern's subject P320 had that amount of use and should not have had a need for a recoil spring replacement.  As stated, no maintenance records have been produced from the CPD."  *See also* Hicks Report  at  22 ("The spent casing from the un-commanded discharge event did not eject, further evidence of a firearm malfunction.").

Sig deposed Hicks over the course of a full day and had every opportunity to interrogate him about his opinion about his failure to eject opinion.  If Sig truly thought Hicks' disclosure of

that opinion was inadequate, Sig would have asked him about the opinio at deposition.  But Sig did not do so.  It follows that Sig knew then—as it knows now—the reasons for Hicks' opinion.

In addition. the fact that Sig's own expert witness Derek Watkins addressed Hicks' failure to eject opinion at his expert deposition confirms Sig was adequately informed of Hicks' opinion.  *See* Watkins Depo. Tr. 86:24-90:9.

***Third***, the Court must reject Sig's single sentence, undeveloped argument that Hicks' opinion should be excluded under Rule 403 because it is "likely to confuse the jury, and prejudicial to Sig Sauer."  Motion at 10.

Sig has not specified or articulated any possible jury confusion associated with this opinion of Hicks, because there is none.[2]  As for undue prejudice, that the P320's persistent failure to eject a shell casing during uncommanded discharges is a bad fact for Sig does not render it unfairly prejudicial.  Again, Sig offers no grounds for its single-phrase argument.  Sig's contention is literally groundless.

## CONCLUSION

For the reasons set forth above, the Court should deny Sig's motion in limine insofar as it seeks to preclude Mr. Ahern from introducing evidence, including expert opinion testimony, about the P320's failure to eject the spent shell casing during an uncommanded discharge.


Date: May 14, 2026

---

[2] The only conceivable confusion would be intentionally caused by Sig if it were to pursue its patently illogical concoction that during gun powder residue testing four days before the May 19, 2019 incident, a P320 had a dead trigger caused by an empty casing not ejecting from the previous shot.  The point here is that when there is an uncommanded discharge, the spent casing does not eject.  There was no uncommanded discharge during the May 15 gun powder residue testing.

THOMAS R. AHERN,

By his attorneys,

*/s/ Peter E. Gelhaar*
T. Christopher Donnelly (BBO #129930)
Peter E. Gelhaar (BBO #188310)
Timothy H. Madden (BBO #654040)
Pietro A. Conte (BBO #707055)
Donnelly, Conroy & Gelhaar, LLP
260 Franklin Street
Suite 1600
Boston, MA 02110
Tel: 617-720-2880
tcd@dcglaw.com
peg@dcglaw.com
thm@dcglaw.com
pac@dcglaw.com

Jeffrey Bagnell (*pro hac vice*)
Jeffrey S. Bagnell, Esq., LLC
55 Post Road West
Westport, CT 06880
Tel: (203) 984-8820
jeff@bagnell-law.com

## CERTIFICATE OF SERVICE

I hereby certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: May 14, 2026

/s/ Pietro A. Conte
Pietro A. Conte